**People of the State of Illinois, Plaintiff-Appellee, v. Roger O. LaBatt, Defendant-Appellant.**

**Gen. No. 51,930.**

First District, Second Division.

February 11, 1969.

Rehearing denied March 5, 1969.

Opinion confirmed on petition for reconsideration April 22, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Suzanne Kohut and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard Trais, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

Roger O. LaBatt was found guilty, after a bench trial, of the charge of attempt murder, judgment was entered

upon the finding, and he was sentenced to a term of not less than ten nor more than twenty years in the penitentiary. Defendant appeals alleging error by the trial court in allowing the prosecution, on rebuttal and over the defendant's objection, to introduce testimony regarding a conversation which took place between defendant and the arresting officer at the time of the arrest.

Roger LaBatt was arrested on the basis of a description, in the vicinity of and shortly after an occurrence in which a police officer, who had responded to a call, was fired upon. That officer later identified defendant as the man who fired the shot.

At trial defendant took the stand and testified as follows on direct examination as to the substance of a conversation between defendant and the arresting officer at the time of the arrest:

> Q. When the officers pulled you from underneath the truck, what did they say to you, if anything?
> A. One of the officers asked me where was the pistol and I told him I have no pistol.

The prosecution, on rebuttal, called the arresting officer who, over defendant's objection was allowed to testify to another version of the same conversation, to wit:

> Q. Calling your attention to the date, time and place, after you had taken the defendant out from underneath the truck, did you have a conversation with the defendant at that time?
> A. Yes, sir.
> Q. What did you say to him and what did he say to you?
> Mr. Ross: Objection.
> The Court: Overruled.
> The Witness: I gave the defendant a fast frisk and found no weapon and I said to him, "Where is the weapon?" And he said, laughing, "You'll never find it."

Defendant was not advised of his constitutional rights as outlined in Miranda v. Arizona, 384 US 436, 86 S Ct 1602 (1966), prior to this conversation.

██ The purpose of what has come to be known as the Miranda warning is the protection of an individual's Fifth Amendment privilege against self-incrimination and the assurance that any statement of an accused which is to be used in evidence against him was voluntary and therefore trustworthy. Once the proposition that one should not be required to testify against himself in a criminal proceeding has been established, it follows that any statement or other evidence of testimonial nature emanating from the individual may not be used in evidence unless the privilege of exclusion of such evidence has somehow been waived.

█ The question of waiver of the Fifth Amendment privilege has been dealt with by the Supreme Court within the context of the voluntary nature of the statement sought to be used against the accused, and the rule has long been established that unless the statement of the accused is voluntary it cannot be assumed that the privilege against its use has been waived. The import of the decision in Miranda was that unless an accused is fully apprised of his rights with respect to counsel, silence, and the possible consequences of speaking, it could not be demonstrated that any statement elicited from him was voluntary in nature and therefore (a) trustworthy, and (b) constituted a waiver of the privilege.

The particular evil to which the court addressed itself in Miranda was the interrogation process and the possibilities for infringement upon constitutional guarantees inherent therein. After reviewing techniques of interrogation spelled out in what the court termed police manuals and affirming the proposition that the Fifth Amendment privilege is applicable during a period of custodial interrogation, the court stated at page 461:

"We are satisfied that all the principles embodied in the privilege apply to informal compulsion exerted by law enforcement officers during in-custody questioning. An individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion described above cannot be otherwise than under compulsion to speak. As a practical matter, the compulsion to speak in the isolated setting of a police station may well be greater than in the courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery."

The factual situation in Miranda was that the police emerged with a written confession after two hours of incommunicado interrogation. In California v. Stewart, considered and decided with Miranda, the police held four persons who were at defendant's house at the time of his arrest for five days, until defendant confessed. These factual situations are vastly different from the present case.

The statement with which we are concerned was not the product of a long and incommunicado interrogation. It was not the product of any interrogation, as that term is commonly understood. The utterance was a direct response to a single question asked by a police officer, concurrently with and pursuant to a frisk, the validity of which has not been questioned. The particular question asked by the officer amounted to no more than a verbalization of the lawful act in which he was engaged, the seeking out of an expected weapon.

That defendant's response was voluntarily made can hardly be open to question. The character of the answer, is on its face, indicative of a lack of intimidation or coercion, the point of concern in Miranda at page 476:

"... the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights. In these circumstances the fact that the individual eventually made a statement is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so."

Here the response was immediate. It was a purposeful evasion of the question, not characteristic of the utterance of one who has been coerced or intimidated into speech.

■ Finally, the present case differs from Miranda in that this response to a single question was admitted into evidence only on rebuttal after defendant had, on direct examination, placed his version of the response into evidence. In Miranda the evidence was introduced by the prosecution in its case in chief. By placing his version into evidence the defendant here also placed the truthfulness thereof into controversy and thus the State was entitled to offer its version in rebuttal. The situation here being significantly different from that presented in Miranda, the holding in that case is not controlling here. Thus, there was no error in admitting the testimony of the police officer.

Assuming, arguendo, that this was a situation in which the fourfold warning of Miranda, as urged by defendant, was required in order that the State be allowed to introduce evidence of defendant's response, it does not necessarily follow that such evidence was also inadmissible for impeachment purposes.

As pointed out above, in Miranda the exclusionary rule was applied to evidence of statements made by the accused which was introduced during the prosecution's case in chief, not in rebuttal, as is the situation here. There is authority, well established, for the proposition that an exception to the exclusionary rule is applicable

23

where the evidence secured by unlawful means is used for purposes of impeachment only, Walder v. United States, 347 US 62, 86 S Ct 1602 (1954), and Tate v. United States, 283 F2d 377 (1960). These cases, however, do not deal with application of the exclusionary rule or its exception to evidence secured in violation of Miranda as both were decided prior to that case.

While the question has not been presented directly to the Supreme Court, some Federal Circuit Courts of Appeals have decided on the basis of dicta in Miranda that the Walder-Tate exception to the exclusionary rule should not be applied where a Miranda violation is involved. Thus, the Circuit Court of Appeals for the Second Circuit in United States v. Fox, 403 F2d 97 (1968), and the Circuit Court of Appeals for the Ninth Circuit in Groshart v. United States, 392 F2d 172 (1968), have held that evidence obtained in violation of Miranda is not properly admissible even for purposes of impeachment. However, both of these courts recognized that a different situation is involved when it is the defendant who first introduces the evidence not admissible for the prosecution, citing United States v. Armetta, 378 F2d 658 (1967) in which it was stated at page 662:

> "While Miranda may enable the defendant to testify generally as to his innocence free from the impeaching effect of a statement taken from him without the required warnings and waiver, this need not go so far as to include testimony concerning the statement itself any more than the type of embroidery at issue in Walder, a decision with which Miranda did not purport to deal."

Finally, in the case of United States v. Vanterpool, 394 F2d 697 (1967), the majority upheld a narcotics conviction on the basis that there was no error in using defendant's in-custody statement for impeachment, the majority finding that an adequate warning had been given. The majority pointed out that they did not reach

24

the question of whether the statement would have been admissible had the warning given not been adequate, but stated at page 699: "However, we do not disagree with Judge Waterman's analysis of that point."

Judge Waterman did not find the warning given to be adequate under Miranda, but concurred in the result on the basis that the defendant had opened the door to use of the statement by the prosecution for purposes of impeachment where defendant had himself, on direct examination, testified as to the substance of the statement. Such is the case here. In United States v. Vanterpool, 394 F2d 697, at page 701, the court stated:

> ". . . it would not be inconsistent with the great purposes behind the Fifth Amendment privilege . . . for a court to hold that the privilege is waived where a person who is represented by trial counsel initially injects into his trial in open court by his testimony under oath the substance of a conversation he had with the government agents when he, likewise, was in custody and was without counsel. . . . The defendant by his own testimony voluntarily and intentionally relinquished his right to have what he said at that interrogation remain hidden from the jury and the trial judge."

Thus even if the conversation between LaBatt and the arresting officer had been such as to fall within the strictures of the Miranda decision, defendant's testimony on direct examination, which injected for the first time into the trial the substance of that conversation, "opened the door" to use by the prosecution of its own version thereof for the purposes of impeachment.

Judgment affirmed.

BURKE and McCORMICK, JJ., concur.

25

## On Rehearing

On petition for reconsideration of a petition for rehearing, which had been denied on March 5, 1969, we have restudied the petition for rehearing, the petitions for reconsideration and suggestions therewith, the answer to the petition for rehearing and having reconsidered the briefs, arguments, abstracts and record herein, we have decided to adhere to our opinion.