THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALAN PERRY, Defendant-Appellant.

First District (4th Division)    No. 61564

Opinion filed April 28, 1976.

James J. Doherty, Public Defender, of Chicago (Ira Churgin, Assistant Public Defender, and Keith Spielfogel, Law Student, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, John T. Theis, and Eugene J. Rudnik, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The defendant, Alan Perry, was charged by complaint with unlawful use of weapons in violation of section 24—1(a)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4)), and with unlawful possession of a firearm for failing to possess a firearm owner's identification card in violation of section 83—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 83—2(a)). Subsequent to a bench trial, the defendant was found guilty of both charges and was sentenced to a term of six months in the House of Correction on each charge, such sentences to run consecutively. On appeal, the defendant contends that

(1) his conviction for failing to possess the statutory requisite firearm owner's identification card should be reversed because he was not adequately advised of his *Miranda* warnings prior to his initial admission that he did not possess such a card and (2) the court erred in imposing consecutive sentences.

A review of the record reveals that on November 9, 1974, approximately 2 a.m., Oscar Jones, a security officer for the Chicago Housing Authority, observed the defendant fire a gun three times and then place the weapon in his right coat pocket. Thereafter, Jones pulled his own gun, identified himself, placed the defendant under arrest and admonished him that "he had a right to have an attorney, he had the right to be silent, he had the right to have an attorney present during questioning." A search of the defendant uncovered a .25-caliber automatic pistol and a pint of wine. However, when Jones inquired whether the defendant had a firearms owner's identification card, the latter responded in the negative. Upon completion of this search, the defendant was taken to a Chicago police station where he was advised of his *Miranda* warnings by a Chicago police officer. The officer then interrogated the defendant concerning the latter's possession of a firearm owner's identification card, but he was unable to produce such card.

At the trial, both the Chicago police officer and Oscar Jones testified as to their involvement in the instant case. The defendant then took the stand and presented a divergent factual scenario. He indicated that on the day in question, a gun was fired by one of two individuals who were walking three feet behind him. He further testified that he never had a gun in his possession and that Oscar Jones recovered a gun from the grass and not his coat pocket. After hearing such testimony, the trial court found the defendant guilty of both charges and sentenced him to consecutive terms of six months in the House of Correction on each charge.

We first consider the defendant's contention that his initial admission to Oscar Jones that he did not possess such a card should not have been admitted into evidence since he was inadequately advised of his *Miranda* rights prior to such statement. In support of this assertion, the defendant posits that the admonishments made by Oscar Jones were inadequate since the defendant was not advised that (1) anything the latter said could and would be used against him in a court of law and (2) if he could not afford counsel, an attorney would be appointed to represent him. Moreover, the defendant relies on a recent United States Supreme Court decision, namely, *Brown v. Illinois*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, to buttress his claim that the subsequent proper recital of the *Miranda* warnings conducted by the Chicago police officer did not remove the taint emanating from Jones' initial inadequate admonishments. While we do not controvert the fact that the defendant

was not advised of (1) the use of his statements in a court of law nor (2) appointed counsel, we agree with the State that the absence of such constitutional safeguards is irrelevant since the defendant was adequately informed of his constitutional rights at the police station and then failed to produce a firearm owner's identification card.

■■ It is well settled in Illinois that *Miranda* warnings are prophylactic measures designed to guard against infringement of the privilege against self-incrimination *(People v. White,* 61 Ill. 2d 288, 294, 335 N.E.2d 457, 461) and to assure that any statement of an accused which is to be used in evidence against him was voluntary and therefore trustworthy. *(People v. LaBatt,* 108 Ill. App. 2d 18, 21, 246 N.E.2d 845, 846, *cert. denied,* 401 U.S. 963, 28 L. Ed. 2d 248, 91 S. Ct. 980.) Moreover, even though a statement stemming from a custodial interrogation is wholly voluntary, it may not be admitted against a defendant over his objection where the procedural safeguards enunciated in the *Miranda* decision have been violated. (*Michigan v. Mosley,* 423 U.S. 96, 46 L. Ed. 2d 313, 319, 96 S. Ct. 321, 324; see *People v. Howell,* 44 Ill. 2d 264, 266, 255 N.E.2d 435, 436, *cert. denied,* 400 U.S. 846.) However, despite the above judicial tenets, it has also been held that where a defendant makes an admission or statement to one law enforcement authority subsequent to receiving improper *Miranda* admonishments and thereafter is removed both in time and place from his original surroundings and, after properly being advised of his *Miranda* warnings, renders a second admission or statement to another authority, the latter admission or statement is admissible. (See *Miranda v. Arizona,* 384 U.S. 436, 496-97, 16 L. Ed. 2d 694, 736, 86 S. Ct. 1602; *People v. Young,* 131 Ill. App. 2d 113, 117-18, 266 N.E.2d 160, 163-64.

■■ Applying such judicial precepts to the case at bar, it is apparent that the defendant's contention is without merit. Although we do not condone Jones' failure to advise the defendant of every procedural safeguard enunciated in the *Miranda* decision, we do not subscribe to the defendant's contention that the decision of *Brown v. Illinois,* 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, controls the outcome of the instant controversy. Rather, we believe that the edict emanating from the *Westover* and *Young* decisions is dispositive of the defendant's initial assertion. In the first place, *Brown* is factually distinguishable from the case at bar since in the former case, a proper recital of the *Miranda* warnings succeeded an illegal arrest. In the instant case, however, the defendant was legally arrested for unlawful use of weapons and for unlawful possession of a firearm. Moreover, as the record revealed, after the defendant was arrested by Jones and inadequately advised of his *Miranda* warnings, he stated that he did not have a firearm owner's identification card. Thereafter, the defendant was transported to a police

station where, subsequent to receiving proper *Miranda* admonishments by a Chicago police officer, he was asked if he possessed such a card, but he failed to produce one. It is our opinion that these facts amply demonstrate that the second interrogation of the defendant was not merely a continued extension of Jones' initial questioning, but was so far removed both in place and time from the defendant's original surroundings as to alleviate any taint attributable to the original interrogation. Therefore, any statement made by the defendant subsequent to receiving proper *Miranda* warnings was admissible in the instant case.

The defendant next contends that the imposition of consecutive six-month sentences was improper because (1) the trial court erred in hearing in aggravation and mitigation and relying on evidence of the defendant's prior arrests which did not result in conviction; and (2) such sentences respectively violated sections 5—8—4(a) and (b) of the Unified Code of Corrections. Ill. Rev. Stat. 1973, ch. 38, pars. 1005—8—4(a), (b).

With regard to the first assertion, the State relies on judicial authority for the propositions that (1) the mere fact that a trial judge, before imposing sentence, is aware of certain inadmissible facts does not automatically insure a reversal of that sentence *(People v. Wilson,* 11 Ill. App. 3d 693, 696, 297 N.E.2d 277, 279), and (2) there must be a definite indication that the trial court considered the inadmissible facts before the sentence will be reversed. *(People v. Gaines,* 21 Ill. App. 3d 839, 848, 316 N.E.2d 14, 22.) Although we do not controvert the respective edicts emanating from such decisions, we believe that application of such authority to the instant case evinces a result contrary to that suggested by the State.

It has been strongly established in many decisions in this State that a reviewing court should not disturb a sentence unless it is greatly at variance with the purpose and spirit of the law or greatly disproportionate to the nature of the crime. *(E.g., People v. Wright,* 56 Ill. 2d 523, 536, 309 N.E.2d 537, 543-44; *People v. Witherspoon,* 33 Ill. App. 3d 12, 23, 337 N.E.2d 454, 463.) Moreover, as conceded by the State, it has been generally recognized that bare arrests which have not resulted in conviction are not admissible at a sentencing hearing. *(E.g., People v. Lemke,* 33 Ill. App. 3d 795, 797-98, 338 N.E.2d 226, 228; *People v. Pohle,* 19 Ill. App. 3d 400, 401, 311 N.E.2d 731, 732.) Rather, some factors which should be paramount in the mind of the trial court during the sentencing process include (1) the seriousness of the crime at bar, (2) the social history and moral character of the defendant, (3) any prior convictions, and (4) the defendant's natural inclination or aversion to commit crime. *E.g., People v. Morgan,* 59 Ill. 2d 276, 282, 319 N.E.2d 764, 768; *People v. Petty,* 33 Ill. App. 3d 183, 184, 337 N.E.2d 249, 250.

■■ Applying these legal precepts to the instant case, we believe the defendant's sentences should be modified. The record reveals that, besides defense counsel inquiring in mitigation about the defendant's age, marital status, residence, and occupation, the only evidence before the trial court at the sentencing hearing was the State's remarks in aggravation that the defendant had five prior arrests and a pending charge for unlawful use of weapons with no dispositions at that time. Although the trial court did not expressly comment that such arrests were a basis for rendering consecutive sentences, it is inconceivable to us that based on the scarcity of evidence proffered by both sides during aggravation and mitigation coupled with the trial court's failure to rule on the defendant's objection to the introduction of these prior arrests, such prior arrests were not considered by the trial court in imposing consecutive sentences. We therefore believe that these facts directly indicate that the trial court was cognizant of and considered the defendant's prior arrests and, in light of the aforementioned legal tenets, warrant a modification of the defendant's sentence.

■■ While we agree with the defendant that the trial court was influenced by the mention of his previous arrests, we are not in accord with the contention that imposition of consecutive sentences violated section 5—8—4(a) of the Unified Code of Corrections. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a).) That section provides in relevant part:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a).)

Judicial construction of this legislative enactment has indicated that section 5—8—4(a) was not intended to cover situations in which more than one offense arises from a series of closely related acts and the crimes are clearly distinct and require different elements of proof. (*E.g., People v. Williams,* 60 Ill. 2d 1, 14-15, 322 N.E.2d 819, 826-27, citing *People v. Johnson,* 44 Ill. 2d 463, 475, 256 N.E.2d 343, 350, *cert. denied,* 400 U.S. 958; *People v. Lumpkin,* 28 Ill. App. 3d 710, 714, 329 N.E.2d 262, 265.) Moreover, an "independent motivation" test has been adopted to determine whether particular chargeable offenses are "part of a single course of conduct during which there was no substantial change of criminal objective." (*E.g., People v. Whittington,* 46 Ill. 2d 405, 410, 265 N.E.2d 679, 682; *People v. Henderson,* 20 Ill. App. 3d 120, 124, 312 N.E.2d 655, 658.) This test consists of an evaluation of all the surrounding facts and circumstances to determine if the defendant's actions resulting in more than one possible charge were in fact a single course of conduct without any change in the criminal objective or new elements of proof required. (*People v. Siglar,* 18 Ill. App. 3d 381, 383, 309 N.E.2d 710, 712.)

██ Upon consideration of the above enunciated legal precepts, it is evident that the incidents from which the instant offenses arose did not constitute a "single course of conduct" within the purview of section 5—8—4(a) (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a)). In the case at bar, the defendant was charged and convicted for (1) carrying a concealed weapon (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(4)) and (2) unlawful possession of a firearm since he did not possess a firearm owner's identification card (Ill. Rev. Stat. 1973, ch. 38, par. 83—2(a)). As the State correctly points out in its brief, although the offenses occurred approximately at the same time, they were not part of a single course of conduct because the commission of each offense required (1) a different act and (2) a different mental state. Moreover, the commission of such offenses would necessitate a change in the defendant's criminal objective as well as require the introduction of new elements of proof. Hence, there was not an infraction of section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a)) so as to justify a modification of the defendant's sentence.

Despite the inapplicability of section 5—8—4(a) to the case at bar, the facts surrounding the instant controversy unequivocally evince an infringement of section 5—8—4(b) of the Unified Code of Corrections which states:

"The Court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court may set forth in the record". Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(b).

In light of the (1) nature and circumstances of the offenses and (2) the history and character of the defendant, we fail to see how the imposition of consecutive sentences would protect the public from further criminal conduct by the defendant. As previously mentioned, Oscar Jones observed the defendant fire three shots in the air and put the gun in his coat pocket. The record is devoid of any testimony elicited at trial neither from Jones nor anyone else that the defendant's motivation or intent in firing the weapon was to injure another individual or to damage property. Moreover, the only information contained in the record concerning the defendant's history and character was that he was (1) 24 years old, (2) living with his guardian, (3) currently employed as a packager, and (4) he did not have any prior criminal convictions. Therefore, even though it is within the sound discretion of the trial court to impose a consecutive rather than a concurrent sentence (*People v. Chatman*, 14 Ill. App. 3d 812, 303 N.E.2d 472 (abstract opinion); *People v. Sykes*, 10 Ill. App. 3d 657, 658, 295 N.E.2d 323, 324), we believe that, based on the above reasoning,

there was a violation of section 5—8—4(b) of the Unified Code of Corrections and, coupled with our discussion regarding the introduction of the defendant's prior arrests at the sentencing hearing, the respective sentences of six months for each offense should accordingly be modified to run concurrently and not consecutively.

For the reasons stated, the judgment entered on the defendant's two convictions for unlawful use of weapons and unlawful possession of a firearm is affirmed and the sentences modified as indicated.

Affirmed and modified.

JOHNSON, P. J., and ADESKO, J., concur.