THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHRISTOPHER GRIFFIN, Defendant-Appellant.

First District (1st Division)   No. 81—157

Opinion filed December 20, 1982.—Rehearing denied March 28, 1983.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Richard B. Levy, and Daniel Jordan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant Christopher Griffin was found guilty by a jury of four counts of theft and four related counts of conspiracy to commit theft based upon four purchases of luxury items at jewelry and gift stores. Defendant was sentenced to four consecutive terms of five years of the theft and conspiracy convictions. On appeal, defendant raises the following issues: (1) whether the trial court's comments concerning an agreement between a witness and the State were proper; (2) whether the trial court erred in giving to the jury non-IPI jury instruction; (3) whether remarks made by the prosecution during closing argument constituted error; (4) whether the trial court erred in admitting testimony of a credit card company investigator and a police investigator concerning a prior arrest of defendant; (5) whether the admission of evidence concerning other crimes which defendant committed with a witness was proper; (6) whether other miscellaneous errors warrant reversal and a new trial; (7) whether the double jeopardy clause bars retrial because of alleged prosecutorial or judicial overreaching; and (8) whether it was error to convict defendant of conspiracy to commit theft where defendant was also convicted of a completed crime.

Since defendant does not contest the sufficiency of the evidence which resulted in his convictions, we need not review the evidence in great detail.

Defendant Christopher Griffin and Dorothy Collins were charged in four indictments with theft and conspiracy to commit theft: (1) of a watch valued at about $2,464 from Lebolt & Co. and/or Telecheck-Chicago Corporation; (2) of a watch valued at about $8,437 from Kay Water Tower Corporation and/or J.B.S. Associates; (3) of a ring at about $2,332 from Rogers Enterprises and/or Telecheck Chicago, Inc; and

(4) of luggage and other items from Green's Luggage and/or Telecredit, Inc. The indictments arose out of incidents which allegedly occurred on Sunday, March 9 and Monday, March 10, 1980. On motion of the State, the four indictments were consolidated for trial.

The record reveals that co-indictee Dorothy Collins and Elizabeth Campbell pleaded guilty to certain offenses, agreed to testify for the prosecution and agreed to make some restitution in exchange for the State's recommendation to the court that the women be given probation and work release. Prior to trial, a motion *in limine* was made by defendant. This motion sought to preclude the State from introducing evidence of other crimes allegedly committed by defendant which were charged in other indictments. The court ruled that only those indictments in which it was charged that defendant was accompanied by a female would be admissible.

At trial, the State offered the testimony of George Dilley, an investigator with Visa Card Services, First National Bank of Chicago. Dilley stated that in February 1980 he became concerned with defendant Christopher Griffin and that he had occasion in his professional capacity to know defendant. After the court sustained objections to subsequent questions by the State, the State informed the court that it was offering Dilley's testimony to show that Dilley went to the Chicago Police Department with a credit card application submitted by defendant and this would show why the State's next witness, Investigator James Kehoe of the Chicago Police Department, was able to obtain an arrest warrant for defendant in March 1980 on charges other than those for which defendant was on trial in the instant case. The State maintained that its investigation following the March 1980 arrest uncovered evidence which resulted in the indictment in the instant case. Dilley continued his testimony and stated that on March 31, 1980, he was responsible for the issuance of an arrest warrant for defendant.

Investigator Kehoe testified that he arrested defendant on March 31 and recounted the circumstances of the arrest to the jury. Kehoe also stated that he arrested a James Buck who gave his name as "James Roosevelt" in connection with a fraudulent credit card application allegedly made by Buck. In addition to the two men, Kehoe took Elizabeth Campbell, who was also present at the time of the arrests, to police headquarters. According to Kehoe defendant was given his *Miranda* warnings at the time of the arrest and prior to any subsequent interrogation. Over objection of defendant, Kehoe testified about a conversation which he had with defendant which the State argued was a declaration against penal interest. According to Kehoe,

defendant stated that he saw nothing wrong with using the name "Dr. Christopher Griffin" on credit card applications and that everyone lies on credit card applications and he also lied. Kehoe stated that as a result of a conversation with Campbell which was held in the presence of an assistant State's Attorney, he was able to obtain a search warrant for Griffin's McClurg Court apartment. As a result of that search, Kehoe stated that he found documents with the name "Dorothy Collins" and that through an investigation, he learned that Collins had a prior arrest record for theft. The court then instructed the prosecution to connect the March arrest with the indictment for the crimes for which defendant was on trial in the instant case. Subsequently, Kehoe testified that as a result of his investigation of Dorothy Collins and defendant, defendant was indicted in May 1980 for the crimes herein and that Kehoe arrested defendant pursuant to a warrant.

Dorothy Collins testified to the circumstances surrounding her arrest and her plea agreement with the State. She described her first meeting with defendant and the circumstances of their relationship. Collins also testified about opening a checking account at a Chicago bank with defendant. Collins stated that defendant took her to Lebolt's Jewelry at Water Tower Place where a watch was purchased. Collins wrote a check in the amount of $2,464 at defendant's direction. Lebolt's utilized Telecheck, which was a check guarantee service. According to Collins, she did not have sufficient funds in her account to cover the purchase. Collins testified to a similar occurrence at Henry Kay Jewelers at Water Tower Place involving the purchase of a watch for $8,437. Henry Kay used J.B.S. Associates for check guarantees. Both of the foregoing occurred on Sunday, March 9, 1980, and, in both instances, payment on the checks was stopped.

Following the Henry Kay transaction, defendant and Collins went to Green's Luggage at Water Tower Place. According to Collins, James Buck waited outside the store. Merchandise was selected by defendant and Collins was directed to write a check for the purchase. A salesperson requested check approval from Telecredit and was informed that the check approval was limited to $600. Defendant then returned some of the merchandise and Collins wrote a check for $562.86. Defendant gave the purchased goods to Buck. A photograph of Buck was shown to the jury.

The final incident occurred the following day on Monday, March 10. Collins accompanied defendant and James Buck to Holland Jewelers in North Riverside where defendant selected a ring. Collins brought the wrong checkbook. Griffin threatened Collins. They re-

turned to the store in the evening with the correct checkbook and at defendant's direction, Collins entered the store alone to make the purchase. After writing the check for $2,332, a clerk then called its check insurance company for approval. The clerk informed Collins that the store would not accept the check. Griffin then entered the store and after a telephone call to the vice-president by the store's assistant manager, the check was accepted. Again, Collins stopped payment on the check.

The foregoing incidents were corroborated by the testimony of various individuals, including salespersons from the various establishments. The parties also stipulated that if representatives from the various check guarantors were called to testify, they would testify that payments were made on account of the checks on which payment was stopped. In closing argument, counsel for defendant argued that the items were purchased by Collins as gifts for defendant.

Defendant was found guilty by the jury of four counts of theft and four counts of conspiracy to commit theft. The court sentenced defendant to four terms of five years on each of the four indictments for theft and conspiracy, which terms were to be served consecutively. Defendant appeals.

■ Defendant first contends that the trial court's comments to the jury about a plea bargain agreement between Dorothy Collins and the State was improper. During cross-examination of Collins concerning the agreement the court stated that "any and all agreements that this defendant—or this witness may have made has no bearing upon the charges pending on the defendant before the Bar." After the court sustained an objection a question as to whether Collins was to receive probation, the court indicated to the jury that the agreement between Collins and the State is a suggestion to the court and that the court is not bound by any agreement and will make its own determination. According to defendant, the court's comments restricted his right to effective cross-examination of witnesses. (See *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837.) Defendant argues that the court's comments diminished the impact of the State's recommendations concerning Collins and that, as a result, Collins testimony was more credible. Defendant also suggests that the credibility of Elizabeth Campbell may have also been enhanced because of the court's comments to the jury during Collins' testimony.

The exposure of a witness' motivation in testifying is a proper function of a defendant's right to cross-examine. (*Davis v. Alaska*; *People v. Thompson* (1979), 75 Ill. App. 3d 901, 394 N.E.2d 422.) In

reviewing the comments of the court, it appears that the court was merely attempting to clarify any confusion which may have resulted from defense counsel's cross-examination of Collins. Unlike *Davis v. Alaska* and other cases cited by defendant, defendant herein was not precluded from cross-examination of a witness to disclose any possible motivation. The record reveals that defendant had adequate opportunity to cross-examine Collins concerning motivation. Any suggestion that the testimony of Elizabeth Collins was similarly affected because of the court's comments is also rejected for the foregoing reasons. Compare *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708.

■ Defendant next contends that the trial court erred in giving to the jury a modified accomplice instruction (Illinois Pattern Jury Instructions, Criminal, No. 3.17 (1968) (hereinafter cited as IPI Criminal)), and in giving the jury a Federal instruction on aiding and abetting (E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, No. 12.03 (3d ed. 1977)). IPI Criminal No. 3.17 was modified by the addition of the following sentence to the end of the instruction: "Material corroboration or direct contradiction of an accomplice's testimony is entitled to great weight." Defendant argues that by the addition of this sentence, "direct contradiction" is required before the jury may reject an accomplice's testimony. As to the Federal instruction, defendant argues that a non-IPI instruction should only be given where the IPI instruction is inadequate. *People v. Pates* (1980), 80 Ill. App. 3d 1062, 400 N.E.2d 553, *aff'd* (1981), 84 Ill. 2d 82, 417 N.E.2d 618.

The final sentence of the modified IPI accomplice instruction is quoted from *People v. Mentola* (1971), 47 Ill. 2d 579, 583, 268 N.E.2d 8, 10. It merely informs the jury the weight to be assigned to testimony which materially corroborates or directly contradicts an accomplice's testimony. It does not, as defendant suggests, require direct contradiction of an accomplice's testimony in order for the jury to reject the testimony. Accordingly, we reject defendant's arguments concerning the modified IPI instruction. As to defendant's objection to the Federal instruction on aiding and abetting, the court read to the jury IPI Criminal No. 5.03, which deals with accountability. In this instruction, the words "aid" and "abet" are used. The Illinois Pattern Jury Instructions do not provide definitions for the two terms. The court may, in its discretion, give a non-IPI instruction where IPI instructions do not deal with a subject. (See *People v. Blackwell* (1979), 76 Ill. App. 3d 371, 394 N.E.2d 1329.) Under the circumstances of this case, we cannot say that the trial court abused its discretion in giving the Federal instruction on aiding and abetting since it defined

those two terms for the jury as the terms were used in IPI Criminal No. 5.03.

■ Defendant next argues that error occurred during the State's closing argument in which the prosecutor referred to a photograph of James Buck, who, Dorothy Collins testified, was present with Collins and defendant at various times. In referring to the Rogers Enterprises theft, the prosecutor stated that defendant threatened Collins and then directed Buck to enter the store. The prosecutor stated: "[T]ake a look at James Buck. That picture of him. And it will tell you what kind of man Mr. Griffin. Take a look at that young fellow. We have heard a lot of words about child, and adolescent, and take a look at James Buck's picture. He should be out studying geography or political science, or something. He's getting a course in the criminal justice system." Defendant's objection to the foregoing was sustained. Defendant argues that the statement to the jury is similar to telling the jury "you can tell a lot about the defendants by their friends" which was held to be error in *People v. Carter* (1979), 73 Ill. App. 3d 406, 392 N.E.2d 188. Defendant also argues that in *People v. Hawkins* (1972), 4 Ill. App. 3d 471, 281 N.E.2d 72, the court held that it was "plain error" where mug shots were introduced. In addition, defendant contends that it was error, despite defendant's lack of objection, when the prosecutor stated: "Mr. Griffin thinks, if he's so smart, he can make a sham out of this trial. He thinks he can con you ladies and gentlemen" because there was no conduct by defendant during trial which showed that defendant attempted to make a "sham" out of the trial or that he attempted to "con" the jury. Defendant also objects to the prosecution's reference to the jury instructions to which he heretofore objected.

After the comment by the State during closing argument, the court promptly sustained defendant's objection. Any prejudice which may have resulted from the comments was greatly diminished by the court's sustaining of the objection. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) In *People v. Carter*, cited by defendant, this court reversed defendant's conviction on other grounds and commented that reference to defendant's friends was improper because it attempted to persuade the jury to convict the defendant because of his associations and not because of the evidence. The comments made by the State in the instant case do not appear to be of the nature as those in *Carter*. In addition, *Carter* involved an attack on the credibility of defendant's alibi witness. Finally, the prosecutor requested that the jury keep in mind the instruction dealing with an accomplice's testimony. Since defense counsel failed to object to this comment, any er-

ror is deemed to be waived. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

■ Defendant next maintains that it was error to permit George Dilley of Visa Card Services and Investigator James Kehoe of the Chicago Police Department to testify about a prior arrest of defendant. Defendant contends that it is error to permit testimony concerning other arrests or crimes to be admitted. See *People v. Hoffman* (1948), 399 Ill. 57, 77 N.E.2d 195.

As a general rule, evidence of other crimes is inadmissible except to show, for example, motive, intent, knowledge or identity of a defendant. (*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805.) In the instant case, the testimony of Kehoe and Dilley was proper since it related to the identification and arrest of defendant. (See *People v. McShan* (1975), 32 Ill. App. 3d 1068, 337 N.E.2d 263.) In addition, the testimony may be properly admitted as evidence of defendant's *modus operandi*. (See *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) Accordingly, we hold that there was no error in permitting the two witnesses to testify about a prior arrest of defendant.

■ Defendant next argues that error occurred through the introduction of an "excessive amount of other crimes" testimony of Elizabeth Campbell and other witnesses. As we previously indicated, testimony of other crimes is admissible only in limited instances. In the instant case, the jury was instructed that the other crimes evidence was to be considered for the limited purpose of showing defendant's "identification, motive, intent, design or knowledge." Defendant does not suggest that this evidence was admitted to establish a propensity for committing crimes, nor does it appear that the State introduced the evidence to show any propensity to commit crimes. (See *People v. Dewey* (1969), 42 Ill. 2d 148, 246 N.E.2d 232.) Under the circumstances of this case, there was no error in admitting the other crimes testimony for a limited purpose of showing defendant's "identification, motive, intent, design or knowledge." See *People v. McDonald*.

Defendant next urges that miscellaneous other errors at trial denied defendant his right to a fair trial. According to defendant, these miscellaneous other errors arose during the State's opening statement and at other times during trial. The State argues, and we agree, that defendant has failed to preserve these miscellaneous errors for review because he did not include the same in his post-trial motion. *People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.

Defendant argues that he was improperly convicted of both theft and conspiracy to commit theft and that the conspiracy convictions

must be vacated. Defendant also argues that. four consecutive five-year sentences are excessive and improper under the facts of this case. He also maintains that he is entitled to a new sentencing hearing because the court could have considered the improper conspiracy convictions at the time defendant was sentenced. See *People v. Filker* (1981), 101 Ill. App. 3d 228, 427 N.E.2d 1311.

Initially, we note that the State has correctly conceded that the four conspiracy convictions must be vacated because it was improper for defendant to be convicted of both the inchoate offense and the principal offense. (*People v. Walker* (1981), 84 Ill. 2d 512, 419 N.E.2d 1167.) Defendant also requests that his sentences be altered to concurrent terms, rather than consecutive terms, of imprisonment. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884, the supreme court reaffirmed its "long-standing rule that absent an abuse of discretion by the trial court a sentence may not be altered upon review." (See *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) It therefore is necessary to determine whether defendant's sentence was an abuse of discretion.

Section 5—8—4(a) of the Unified Code of Corrections provides that the court shall determine at the time of sentencing for multiple offenses whether the sentences are to run concurrently or consecutively. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a).) Subsection (b) of section 5—8—4 provides that:

"The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b).)

In construing the requirements of section 5—8—4(b), the supreme court stated that the record must show that the sentencing court is of the opinion that a consecutive sentence is necessary for the protection of the public. (*People v. Pittman* (1982), 93 Ill. 2d 169.) At the sentencing hearing, the court stated:

"[Defendant is] certainly a young man, but in a short period of life, adulthood, he has been able to circumvent the law. He has used people. He has taken advantage of people. He has used cunningly his abilities and they are of great abilities. I have seen a lot of people up here before me, but I would indicate that Mr. Griffin is an intelligent individual who fully is well aware of what he is doing. This is not a situation of an eight-

een year old boy just out of the farm who is not aware of what he's doing. That he's only doing this because it's a lark or because of the great need or desire or need because of funds or what have you. This man is a cunning man. He has used his wits. He has used his charm and he has abused the general public by using these matters. Certainly this is not a crime of passion. This is not a violent crime, but his conduct is such that as far as this Court is concerned, it can very well be construed as coming within the realm of taking advantage of people and using people for his own benefit and his own needs and desires, whatever they may be."

After the court sentenced defendant to four consecutive five-year terms, the court stated:

"Now, the question of consecutive terms is to be imposed on this matter and was considered by this Court, but since all of the matters that were tried together although notwithstanding one jury heard it, it is the opinion of this Court that each matter could be tried separately and a verdict could be reached separately."

Counsel for defendant stated that he thought that the sentence was wrong and that there was no justification for imposing a 20-year sentence for theft where a 20-year sentence is also the minimum sentence for murder.

As indicated in *People v. Meints* (1976), 41 Ill. App. 3d 215, 221, 355 N.E.2d 125, 130, Standard 3.4 of the American Bar Association Project on Minimum Standards for Criminal Justice stated that consecutive sentences are rarely appropriate. In *People v. Zadel* (1979), 69 Ill. App. 3d 681, 387 N.E.2d 1092, the court reiterated that consecutive sentences should be imposed sparingly. In appropriate circumstances, Illinois appellate courts have reduced a defendant's sentence from consecutive terms to concurrent terms. In *People v. Perry* (1976), 38 Ill. App. 3d 81, 347 N.E.2d 340, defendant was convicted of unlawful use of weapons and unlawful possession of a firearm for failing to possess a firearm owner's identification card. The court considered the nature and circumstances of the offenses and the history and character of defendant and, in concluding that defendant's sentences should run concurrently, rather than consecutively, stated: "[W]e fail to see how the imposition of consecutive sentences would protect the public from further criminal conduct by the defendant." (38 Ill. App. 3d 81, 87, 347 N.E.2d 340, 345.) In *People v. Pace* (1975), 34 Ill. App. 3d 440, 339 N.E.2d 785, defendant was convicted of attempt murder and aggravated battery. The court stated that although it considered

the crimes to be brutal, consecutive sentences were not required to protect the public from further criminal conduct by the defendant. Similarly, in *People v. Reno* (1974), 17 Ill. App. 3d 348, 308 N.E.2d 3, the defendant was sentenced to consecutive terms for rape and aggravated battery. The court concluded that the record did not support the imposition of consecutive terms as being necessary for the protection of the public and reduced defendant's sentences to concurrent, rather than consecutive, terms.

In light of the (1) nature and circumstances of the offenses herein and (2) the history and character of defendant, we cannot say that the basis for the imposition of consecutive sentences has been adequately set forth in the record so as to indicate that such a sentence is necessary to protect the public from further criminal conduct by defendant. The crimes herein were nonviolent and did not involve the use of a weapon. Additionally, the offenses involved consensual transactions with four retail establishments. The presentence investigation report disclosed that, at the time of sentencing, defendant was 21 years of age and that he had completed 120 college credit hours in computer science. At the time of his arrest in May 1980, defendant was on parole for a violation of the Federal Firearms Act which involved submitting false information on an application for a firearm permit. The record also revealed that defendant had been employed as a tailor from February 1979 until his arrest in May 1980.

In *People v. DeSimone* (1982), 108 Ill. App. 3d 1015, 439 N.E.2d 1311, the Second District of this court upheld the imposition of consecutive sentences as being necessary to protect the public from further criminal conduct by defendant. In that case, defendant was convicted of an exceptionally brutal attempt murder and armed robbery. In addition, defendant DeSimone's past criminal record included a prior murder conviction. It is apparent that the elements warranting consecutive sentences in *DeSimone* are not present in the instant case.

We conclude that there are insufficient factors in the record, as required by the statute, to show that consecutive terms are necessary to protect the public from future criminal conduct by defendant and that consecutive terms for the four convictions was an abuse of discretion. Therefore, defendant's sentences are modified and reduced to concurrent terms of imprisonment in accordance with section 5—8—4(b).

As to defendant's contention that he is entitled to a new sentencing hearing, the record does not indicate that the court considered the improper conspiracy convictions despite the fact that the *mittimus* re-

flected that defendant was sentenced on both theft and conspiracy. See *People v. Miles* (1981), 96 Ill. App. 3d 721, 422 N.E.2d 5.

As to defendant's allegations of prosecutorial or judicial over-reaching, the record is without support for this contention. Defendant also raises a new issue in his reply brief claiming reversible error was committed in the consolidation of the four indictments into one trial, which issue we shall not consider because the issue was not properly preserved for review. *People v. Calhoun* (1970), 46 Ill. 2d 60, 263 N.E.2d 69.

In addition, we have before us a motion by attorneys Joseph Ettinger and Ettinger & Schoenfield, Ltd., for an order exonerating the defendant's appeal bond. This court has previously entered an order allowing said motion; however, the defendant has filed before us a motion to vacate the within order and said attorneys have filed a lengthy and detailed series of objections to said motion to vacate and defendant has filed a response to said motion to vacate. We find that these matters present complicated factual issues which should not be determined by this court on the basis of the affidavits alone. Consequently, our former order allowing exoneration of the bail bond as moved by attorneys Joseph Ettinger and Ettinger & Schoenfield is hereby vacated and the entire matter of the exoneration of the bail bond, and all objections thereto, and the disposition thereof, is remanded to the trial court for hearing and disposition with the direction that the trial court hear all necessary evidence and proceed to determine a proper and legal disposition of the bail funds.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part, the conspiracy convictions are vacated and the sentences are modified and reduced to concurrent, rather than consecutive, terms. This cause is remanded to the trial court for the issuance of a corrected *mittimus* in accordance with this opinion and for disposition of the matter concerning the exoneration of the bail bond.

Affirmed in part; vacated in part; sentences reduced and remanded; motion remanded with directions.

GOLDBERG and McGLOON, JJ., concur.