# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Buckner*, 2013 IL App (2d) 130083

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIDGETTE L. BUCKNER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0083 |
| Filed | September 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court affirmed defendant's guilty pleas to two counts of insurance fraud and one count of wire fraud and the sentences imposed, notwithstanding defendant's contentions that the insurance fraud counts should have been merged under the one-act, one-crime doctrine and that the imposition of consecutive sentences was an abuse of discretion, since defendant forfeited the merger claim by failing to file a motion to withdraw her guilty plea, and under the circumstances, including fraudulently collecting death benefits for her husband and various children, consecutive sentences were appropriate. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-CF-1941; the Hon. John J. Kinsella, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas A. Lilien and Christopher McCoy, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman and Kristin M. Schwind, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Presiding Justice Burke and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Bridgette L. Buckner, pleaded guilty to two counts of insurance fraud (720 ILCS 5/46-1(a) (West 2008)) and one count of wire fraud (720 ILCS 5/17-24(a)(1)(A) (West 2008)). The circuit court of Du Page County sentenced her to eight years' imprisonment. On appeal, she contends that two of her convictions should have been merged under the one-act, one-crime doctrine and that the trial court abused its discretion in giving her consecutive sentences under section 5-8-4(b) of the Unified Code of Corrections (730 ILCS 5/5-8-4(b) (West 2008)). Because defendant forfeited any challenge to her convictions under the one-act, one-crime rule when she failed to file a motion to withdraw her guilty plea, and because the trial court did not abuse its discretion in imposing consecutive sentences pursuant to section 5-8-4(b), we affirm.

¶ 2                              I. BACKGROUND

¶ 3 Defendant was indicted on two counts of insurance fraud (720 ILCS 5/46-1(a) (West 2008)), two counts of wire fraud (720 ILCS 5/17-24(a)(1)(A), (B)(i) (West 2008)), and two counts of mail fraud (720 ILCS 5/17-24(b)(1) (West 2008)) related to her submission of two fraudulent life insurance claims through her previous employer. Pursuant to an agreement with the State, defendant pleaded guilty to count I (insurance fraud), count II (insurance fraud), and count IV (wire fraud), and the remaining counts were nol-prossed.

¶ 4 At the guilty plea proceeding, defendant's attorney characterized the guilty plea as a "blind plea." However, the State moved to nol-pros the remaining counts "based upon [defendant's] plea." Further, the trial court, in admonishing defendant, referred several times to the plea "agreement." The trial court also advised defendant that the remaining charges would be dismissed "pursuant to [her] plea." The trial court added that there was "no

agreement as to what the sentence [would] be." After being admonished, defendant "accept[ed] the agreement."

¶ 5 Defendant failed to personally appear on the original date for sentencing, and the matter was continued. On the next sentencing date, the trial court found that defendant, who was absent again, had willfully failed to appear. The trial court conducted the sentencing in defendant's absence, although her attorney was present.

¶ 6 The following facts are taken from the sentencing hearing. Defendant began working for Hallmark Insurance Corporation (Hallmark) in March 2008. As part of her employment, she enrolled in a life insurance plan for her husband in the amount of $15,000 and for each of her three children in the amount of $10,000. In April 2008, defendant submitted a claim for life insurance, supported by a death certificate for the purported death of one of her children. The claim was approved, and she received a check for $10,000. She was also paid for five days of bereavement leave based on the death of her child.

¶ 7 In September 2008, on the day before she was scheduled to return to work after an injury-related absence, she called into work and stated that her husband, who was an FBI agent, had been killed in the line of duty. She thereafter made a claim for the $15,000 death benefit under the life insurance policy at Hallmark. In doing so, she included her husband's death certificate.

¶ 8 After defendant claimed the life insurance based on her husband's asserted death, Hallmark contacted the security department at its parent company. The security department initiated an investigation into both of defendant's life insurance claims. The investigation revealed that defendant had submitted a fraudulent death certificate in support of each of those claims. The death certificates had been signed by a medical representative who had not been with the health department for many years and by a funeral director who had not been associated with the particular funeral home for seven or eight years. The death certificates appeared as though they had been "whited out and retyped."

¶ 9 The investigators interviewed defendant at the end of September 2008. Initially, defendant denied submitting false claims for life insurance benefits as to both her child and her husband. It was only after the two investigators stated that they were retired FBI agents, and would know if her husband had been killed in the line of duty, that defendant confessed that both life insurance claims were false. Although defendant offered to pay back the $10,000, she admitted she did not have that amount of money.

¶ 10 Further evidence showed that employees at Hallmark had been very sympathetic about defendant's child's death and had collected money and given it to defendant. Defendant had also submitted her own short-term disability claim based on her husband's death. It was also learned that defendant had forged the college diploma that she included with her employment application at Hallmark.

¶ 11 Defendant had previously submitted life insurance claims on her husband and children when she worked for an employer known as HSBC. She was paid over $60,000 on those claims in 2007. In that situation, she used altered documents that were similar to, and contained the "same misspelled words" as, those that she had submitted in this case.

¶ 12 One of Hallmark's investigators discovered that, after leaving her employment at

Hallmark, defendant went to work for a company named LifeWatch. While at the new company, defendant claimed that one of her children, whom she had sought life insurance benefits on twice before, had died. Although defendant did not have any life insurance on that child, she did receive an outpouring of sympathy and some flowers. One of the investigators opined that, based on her experience, the false insurance claims at the three employers showed that defendant was "out to commit fraud with each employer that she went to work for."

¶ 13    A postal inspector assigned to investigate mail fraud was advised by a bank investigator in 2009 that defendant was suspected of fraudulently obtaining a credit card in someone else's name. The investigation revealed that defendant had created three fraudulent bank accounts from which she obtained several thousand dollars.

¶ 14    In 2010, as part of that mail fraud investigation, the Streamwood police department stopped defendant as she was driving. During the traffic stop, defendant presented a driver's license in her mother's name. After persisting that she was her mother, defendant eventually admitted her true identity at the police station.

¶ 15    The police inventoried defendant's vehicle and discovered a credit card in someone else's name, a wallet containing a driver's license of someone other than defendant, and numerous slips of paper and envelopes containing the personal information, such as addresses, social security numbers, and birth dates, of approximately 40 people who had worked with defendant at LifeWatch. It was later determined that defendant had defrauded about 16 of those people for over $34,000.

¶ 16    An investigator from the Du Page County State's Attorney's office, in attempting to locate defendant after she had failed to appear at her sentencing, discovered that the address she had provided as part of her presentence report was for her mother's residence at a senior living facility. There was no evidence that defendant had ever lived at that address, and, according to the terms of the lease, she would not have been allowed to live there.

¶ 17    After hearing arguments, the trial court imposed sentence, noting that the "facts [were] particularly egregious in terms of the audacity of [defendant's] conduct." The trial court observed that defendant committed a similar fraud while employed at HSBC and that she was involved in ongoing fraudulent behavior when she was arrested in this case. The trial court was concerned that defendant had perpetrated a fraud on the court by providing a false address as part of the preparation of the presentence report, which the court found "particularly aggravating, and also suggestive of her character and consistent with her being engaged in ongoing and continuing fraud." The trial court was also troubled by "the sickening karma of suggesting the death of your own child as a means of obtaining money by fraud," noting that she "apparently did it more than once." The trial court characterized all of that as "very aggravating."

¶ 18    The trial court also stated that the series of fraud engaged in by defendant was "quite astonishing" and that defendant's recent behavior was "not evidence to any great potential for rehabilitation." The trial court further commented that her perpetration of a fraud on the court was "probably the highest or most significant sign of an inability to be rehabilitated."

¶ 19    In considering the mitigation evidence, the trial court noted that defendant caused no

bodily injury, that she had no arrest record, and that she had spent most of her life with no contact with the criminal justice system. The trial court pointed out that defendant's criminal conduct, based on the evidence before it, did not commence until the "last several years."

¶ 20    The trial court imposed a sentence *in absentia* of five years' imprisonment on count I, a consecutive sentence of five years in prison on count II, and a concurrent prison sentence of four years on count IV. Defendant was subsequently located and taken into custody.

¶ 21    Defendant thereafter filed a motion to reconsider the sentence, which the trial court denied. In doing so, the trial court stated that it had imposed consecutive sentences pursuant to section 5-8-4. The trial court explained that the consecutive sentences were necessary to protect the public from defendant's further criminal conduct and that it believed that it had "made the record" in that regard. The trial court added that "in this instance, [it had] already alluded to both the offense the defendant committed and the nature of the offense as well" and "[t]he defendant's fraudulent behavior both before the commission of these offenses and subsequent." The trial court emphasized that it considered the fact that defendant attempted to evade sentencing and punishment as one of the "more significant considerations." Lastly, the trial court stated that the fact that defendant intended the consequences of her conduct was "particularly egregious." Defendant appealed the denial of her motion to reconsider the sentence.

¶ 22    On appeal, this court remanded the case because trial counsel had failed to file a proper certificate under Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). See *People v. Buckner*, 2012 IL App (2d) 111023-U, ¶ 3. On remand, defendant filed a second motion to reconsider the sentence. Before this court issued its mandate, the trial court denied the second motion to reconsider the sentence, and defendant appealed again.

¶ 23    In that appeal, this court vacated the trial court's order denying defendant's second motion to reconsider the sentence, because the order was entered before we issued our mandate. We summarily remanded the case. See *People v. Buckner*, No. 2-12-0486 (Dec. 4, 2012) (minute order). On remand, defendant filed her third motion to reconsider the sentence. In that motion, defendant argued, among other things, that count I was a Class 3 felony as opposed to a Class 2 felony, that the convictions on count II and count IV should be merged under the one-act, one-crime doctrine, and that consecutive sentences were improper.

¶ 24    At the hearing on defendant's third motion to reconsider the sentence, the State conceded that count I was a Class 3 felony. As for the one-act, one-crime contention, the trial court recalled that the sentence "was basically a five plus five and the four would have merged with the five." The trial court added that it "[did not] dispute [defendant's] position on that" and that "it [did not] believe [it] imposed any additional time for that offense."

¶ 25    On the issue of consecutive sentencing, the trial court stated that the evidence "reflected a period of time in which the defendant engaged not only in this fraudulent behavior but in other behavior that was fraudulent or intended to result in fraudulent acquisition of money or property of other folks." The trial court further explained that it had found in aggravation that defendant had attempted to avoid the sentence and the consequences of her guilty plea by her absence from the sentencing proceedings. The trial court recalled "a significant

amount of aggravation that justified the sentence that [it] imposed at the time."

¶ 26    The trial court recognized the mitigating evidence that was put forth at sentencing "in terms of the defendant's family background, religious affiliations and beliefs" and accepted "her representation of redemption and hopes to come to grips with the fraudulent behavior." However, the trial court emphasized that defendant's "fraudulent behavior was pretty outrageous and audacious in terms of the nature of what she did, which [did] not speak well for her."

¶ 27    Following its comments, the trial court stated that the sentence "with regards to Counts 2 and 4 will stand." It reduced the sentence on count I from five years' imprisonment to three years in prison. It further stated that the sentences on counts I and II would be consecutive and that the sentence on count IV would be concurrent. Defendant filed this timely appeal.

¶ 28                                    II. ANALYSIS

¶ 29    Defendant first contends that the conviction on count IV should have been merged with the conviction on count II under the one-act, one-crime rule. The State disagrees, contending in part that, although the issue was forfeited, it may be considered on appeal under the plain-error doctrine. We hold, however, that the issue was forfeited and that the plain-error doctrine does not apply. See *People v. Rogers*, 364 Ill. App. 3d 229 (2006).

¶ 30    In *Rogers*, we held that, where a defendant entered into a plea agreement that called for him to plead guilty to certain charges and the State to drop the remaining charges, and there was no agreement as to the sentence to be imposed, the defendant forfeited our consideration of his contention of a violation of the one-act, one-crime rule by failing to file a motion to withdraw his guilty plea in the trial court. *Rogers*, 364 Ill. App. 3d at 246. We so held because, absent a motion to withdraw the guilty plea, the guilty plea remained uncontested, along with the defendant's voluntary relinquishment of rights, such as any claim of a violation of the one-act, one-crime rule. *Rogers*, 364 Ill. App. 3d at 246 (citing *People v. Townsell*, 209 Ill. 2d 543, 547 (2004)).

¶ 31    Applying *Rogers* to the present case, we conclude that defendant has forfeited our review of the one-act, one-crime issue. The record of the guilty plea proceeding shows that, despite defense counsel's characterization of a "blind plea," defendant agreed to plead guilty to counts I, II, and IV in exchange for the State's agreement to nol-pros counts III, V, and VI. See *Rogers*, 364 Ill. App. 3d at 241 (blind pleas are those entered into with no inducement from the State (citing *People v. Lumzy*, 191 Ill. 2d 182, 185 (2000))). Further, there was no agreement as to what the sentence would be. Although defendant raised the one-act, one-crime issue in her motion to reconsider the sentence, she sought to vacate one of her convictions without moving to withdraw her guilty plea. This is nearly identical to the scenario in *Rogers*. Therefore, as in *Rogers*, we hold that defendant has forfeited our review of her one-act, one-crime contention.

¶ 32    Further, there can be no plain-error review in this particular context. In *Rogers*, we distinguished *People v. Moshier*, 312 Ill. App. 3d 879 (2000), a case that applied plain-error analysis to a one-act, one-crime issue where the defendant filed a motion to reconsider his sentence but did not file a motion to withdraw his guilty plea. *Rogers*, 364 Ill. App. 3d at

-6-

240. In doing so, we emphasized that the defendant in *Moshier*, unlike the defendant in *Rogers*, pleaded guilty to all of the charges and did not have a plea agreement that obligated the State to forgo prosecuting some of the charges in exchange for the defendant's guilty plea to the remaining charges. *Rogers*, 364 Ill. App. 3d at 244. Thus, we did not engage in any plain-error review in *Rogers*.

¶ 33    Had we done so in *Rogers*, and had we granted the defendant's request to vacate one of his convictions without his having moved to withdraw his guilty plea, we would have created an anomaly. The defendant would have received the full benefit of his bargain under the plea agreement, while later avoiding his own obligation by unilaterally reducing the convictions to which he had agreed. We stand by our decision in *Rogers* and do not apply plain-error analysis to the one-act, one-crime issue in this case in light of the plea agreement and the absence of any motion to withdraw the plea.

¶ 34    We next address the issue of whether the trial court abused its discretion in imposing consecutive sentences on the convictions on counts I and II.[1] Defendant contends that it was an abuse of discretion to impose consecutive sentences to protect the public when she had no criminal history, she never had the opportunity to demonstrate her rehabilitative potential, she accepted responsibility for her conduct, and she neither caused nor threatened physical harm to anyone.

¶ 35    In cases where consecutive sentences are not mandatory, such sentences should be imposed sparingly. *People v. King*, 384 Ill. App. 3d 601, 613 (2008). Section 5-8-4(b) of the Unified Code of Corrections provides that, other than where consecutive sentences are mandated, a concurrent sentence must be imposed, unless, considering the nature and circumstances of the offense and the history and character of the defendant, consecutive sentences "are required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5-8-4(b) (West 2008). If the trial court imposes consecutive sentences to protect the public, it "shall set forth in the record" the basis for such sentences. 730 ILCS 5/5-8-4(b) (West 2008).

¶ 36    Because the trial court is in the best position to consider a defendant's credibility, demeanor, general moral character, mentality, social environment, and habits, the trial court's imposition of consecutive sentences will not be reversed on appeal absent an abuse of discretion. *King*, 384 Ill. App. 3d at 613. The record must show that the trial court concluded that consecutive terms were necessary to protect the public. *People v. Sanders*, 356 Ill. App. 3d 998, 1006 (2005). If the record does not reflect that the trial court took mitigating factors into account, including a defendant's potential for rehabilitation, and the record does not support the trial court's determination that consecutive sentences were necessary to protect

---

[1]In addressing this issue, we note that, although a defendant who seeks to challenge a sentence imposed pursuant to a plea agreement must move to withdraw the guilty plea, a defendant who enters a plea agreement that calls for the dismissal of certain charges, but that is silent as to the sentence, may file a motion to reconsider the sentence without filing a motion to withdraw his guilty plea. *Rogers*, 364 Ill. App. 3d at 244 (citing *Lumzy*, 191 Ill. 2d at 187). Thus, we may consider defendant's challenge to the propriety of the consecutive sentences.

the public, an abuse of discretion has occurred. *People v. O'Neal*, 125 Ill. 2d 291, 298-301 (1988).

¶ 37    We initially consider defendant's point that the trial court "did not even explain why it imposed consecutive sentences until the hearing on the motion to reconsider the sentence." Our review of the original sentencing hearing reflects that, although the trial court did not expressly explain in so many words its reasons for imposing the consecutive sentences, it did discuss the various aspects of defendant's conduct, history, and character, both aggravating and mitigating, relevant to its decision to impose consecutive sentences for the purpose of protecting the public. This was sufficient to satisfy section 5-8-4(b) and to allow proper review of the trial court's decision. See *People v. Allen*, 268 Ill. App. 3d 947, 950 (1994) (trial court need not recite language of section 5-8-4(b) provided the record shows it believed consecutive sentences were necessary to protect the public).

¶ 38    We next consider whether the record supports the trial court's determination that consecutive sentences were necessary to protect the public. We agree with the trial court that defendant's fraudulent conduct was ongoing, extensive, and not likely to have ended had she not been arrested and incarcerated. As the trial court emphasized several times, defendant persisted in her fraudulent behavior with the court when she provided false information in the preparation of her presentence report, when she absented herself from the proceedings, and when she attempted to evade custody.[2] We further agree with the trial court's characterization of defendant's conduct as "particularly egregious in terms of [its] audacity," considering how she repeatedly proclaimed that members of her immediate family had died and then willingly accepted, not only insurance proceeds, but outpourings of sympathy and financial support from her coworkers. Defendant's conduct can fairly be described as despicable and strongly indicative of her likelihood to continue her criminal activities.

¶ 39    Further, the trial court properly addressed defendant's potential for rehabilitation. It stated that defendant's behavior was "not evidence to any great potential for rehabilitation" and that her perpetration of a fraud upon the court was "the highest or most significant sign of an inability to be rehabilitated." We consider such characterizations of defendant's questionable rehabilitative potential as accurate and entirely supported by the record.

¶ 40    We are also not persuaded by defendant's assertion that she could not be subjected to consecutive sentences when, due to her lack of criminal history, she had had no prior opportunity to demonstrate her rehabilitative potential. There is simply no authority prohibiting consecutive sentences when a defendant has not had prior exposure to any rehabilitative opportunities. Such an argument is devoid of merit.

¶ 41    Defendant also argues that consecutive sentences were improper because her crime caused no physical harm to anyone. She cites no authority, and we are aware of none, that would preclude consecutive sentences where the harm to the victims was purely financial. Rather, at least two courts have affirmed such sentences in the context of financial harm only. See *People v. McManus*, 197 Ill. App. 3d 1085, 1100-01 (1990) (consecutive sentences

---

[2]This evasion belies defendant's assertion that she willingly accepted responsibility for her conduct.

imposed for fraud); *People v. Shaw*, 133 Ill. App. 3d 391, 405 (1985) (consecutive sentences proper for defendant who was involved in numerous incidents of fraud and was public nuisance and danger to society). Further, section 5-8-4(b) refers to protecting the public from "criminal conduct" and is not limited to conduct that results only in physical harm. 730 ILCS 5/5-8-4(b) (West 2008). We cannot read into the statute a limitation not expressed. See *Board of Education of Waukegan Community Unit School District No. 60 v. Orbach*, 2013 IL App (2d) 120504, ¶ 17. There was plenty of evidence in this case that defendant was extremely dangerous to the public in a financial sense and that she would have persisted in her ongoing crime spree had she not been removed from the opportunity to do so.

¶ 42       That leaves defendant's contention that the trial court did not properly consider her lack of prior criminal history and the fact that she did not begin her criminal conduct until her late forties. The trial court, however, expressly recognized that, in terms of mitigation, defendant had caused no bodily injury, had no prior criminal record, had spent most of her life outside the criminal justice system, and had not commenced her criminal conduct until the "last several years." We cannot say that the trial court did not give such mitigation evidence its full due. However, the mitigation evidence was not sufficient to overcome the significant aggravating evidence that defendant would likely have continued to commit fraud on an unsuspecting public if she were not incarcerated for a longer period of time.

¶ 43       Finally, defendant relies on several cases that overturned consecutive sentences involving what she asserts to be "far more serious crimes than those at issue here." See *People v. O'Neal*, 125 Ill. 2d 291 (1988); *People v. Rucker*, 260 Ill. App. 3d 659 (1994); *People v. Gray*, 121 Ill. App. 3d 867 (1984). Those cases are distinguishable from this case, however, as they involved circumstances and mitigating evidence different from those present here. Indeed, defendant is here engaging in a comparative sentencing argument, which is not permissible. See *People v. Fern*, 189 Ill. 2d 48, 54-55 (1999).

¶ 44       Although we recognize that consecutive sentences are significant and that they should be imposed only sparingly, our review of the record demonstrates that such sentences were entirely appropriate in this case. Because the trial court did not abuse its discretion, we affirm the imposition of the consecutive sentences as to count I and count II.

¶ 45                                          III. CONCLUSION

¶ 46       For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 47       Affirmed.