NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190765-U

NOS. 4-19-0765, 4-19-0766, 4-19-0767, 4-19-0768 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 17, 2021
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, <br> Plaintiff-Appellee, <br> v. <br> BRITT M. CRAIG, <br> Defendant-Appellant. | ) Appeal from the <br> ) Circuit Court of <br> ) Woodford County <br> ) Nos. 18CF205 <br> )     18CF211 <br> )     18CF212 <br> )     18CF213 <br> ) <br> ) Honorable <br> ) Charles M. Feeney III, <br> ) Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court did not err in sentencing defendant to nonmandatory consecutive terms of imprisonment totaling 12 years upon defendant's guilty plea to four burglary charges.

¶ 2        After the defendant, Britt M. Craig, entered pleas of guilty to four counts of burglary (720 ILCS 5/16-1(a)(1)(A) (West 2018)), the circuit court sentenced him to three years of incarceration on each of the four counts to run consecutively. Defendant asserts the consecutive sentences of 12 years of imprisonment are excessive, and specifically that the court did not adequately consider mitigating factors such as (1) that his criminal history consists of nonviolent offenses, (2) that the offenses to which he pled were motivated by his drug addictions which he

had been struggling with since his teenage years, and (3) that the sentences adversely impact the minor son who lived with him.

¶ 3        This is a consolidated appeal of Woodford County case Nos. 18-CF-205, 18-CF-211, 18-CF-212, and 18-CF-213. These matters bear our case Nos. 4-19-0765, 4-19-0766, 4-19-0767, and 4-19-0768. We consolidated the appeals on motion of the defendant on January 21, 2021. We affirm the judgments of the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5        In 2018, defendant was charged with burglary in four individual cases, to which he each entered pleas of guilty. Pursuant to one plea, the State dismissed the companion theft charge to one of the burglaries. Defendant requested the preparation of a presentence investigation report (PSI) and a Treatment Alternatives for Safe Communities (TASC) evaluation, which the court ordered. The gist of the conduct underlying the charges was defendant's entry into the storage units of others and the thefts of hundreds of items therein.

¶ 6        The PSI disclosed defendant had an eight-year-old son, who lived with defendant. Defendant reported he spent his leisure time with his son, and had a great relationship with him. Defendant was employed part-time prior to his arrest, and had other prior employment as well.

¶ 7        The PSI described defendant's lengthy and extensive use of drugs and alcohol dating back to his preteen years. Defendant began consuming alcohol at age 12, and had developed a cannabis addiction by the age of 13. Defendant later began using prescription painkillers and Kratom, a legal plant-based product that produces opiate-like effects. Defendant's father was an alcoholic, and he had an uncle who was a drug addict. Defendant was diagnosed with depression as a teenager, and entered various treatment programs over the years including drug court required programs. Defendant relapsed numerous times, and committed the instant offenses to support his

- 2 -

use. Not surprisingly, defendant reported he was under the influence of drugs at the time he committed each offense.

¶ 8        Per the report from the TASC representative, defendant underwent a full behavioral health assessment which confirmed defendant met the criteria for "Opioid withdrawal-Severe, Early Remission, in Controlled Environment." The TASC representative recommended intensive outpatient drug treatment, and noted that if defendant received the benefit of TASC case management and such treatment, defendant's likelihood of rehabilitation would be strong.

¶ 9        The PSI described defendant's extensive criminal history, though all nonviolent, encompassing over thirty entries. The history includes five felony convictions, and matters pending other than the cases at bar. There were three theft convictions, one residential burglary, and one for manufacturing or delivery of cannabis. Defendant's prior sentences included periods of probation, two boot camp sentences with incarceration threatened for unsuccessful completion, and three years of prison for one of the theft convictions. Defendant's pending matters included two potential revocations in Tazewell County, arising out of drug court sentences for theft, burglary, and possession or use of a weapon by a felon.

¶ 10        At the sentencing hearing, the circuit court admitted on request of the State: (1) two victim impact statements expressing anger toward defendant who had stolen the victims' property, and (2) a search warrant inventory of 256 items seized from defendant.

¶ 11        Defendant exercised his right of allocution, pleading he was a defeated addict who began self-medicating when he was diagnosed with depression as a teenager. Defendant described his struggles with addiction and turning to crime to support his habit. Defendant began abusing prescription opiates in his twenties after falling and hurting his back, and his use intensified after shoulder surgery years later. Though he worked, it was never enough to buy the drugs he desired.

¶ 12    Defendant entered the Tazewell County drug program later and did well for a period of time, but he began using Kratom after the death of his father. He reported he used so much Kratom he was hospitalized for liver failure and had his gallbladder removed. Defendant related he was prescribed opiates for pain following surgery, and then began using Kratom again. Defendant claimed he committed the offenses herein to support his Kratom habit.

¶ 13    Defendant said his addiction had prevented him from spending time with his son and his mother. He sought probation, and pleaded for a sentence that would not take him away for the remainder of his son's childhood.

¶ 14    The circuit court asked the parties to investigate and advise the court regarding the disposition of defendant's 2003 residential burglary conviction. They reported defendant was convicted of that offense, was sentenced to TASC probation which was later revoked, and then sentenced to boot camp. Based on this, the court determined defendant was not again eligible for TASC probation.

¶ 15    During the arguments at the sentencing hearing, defendant urged the court to consider the relationship of the offenses to his addictions, as well as the impact a long period of incarceration would have on defendant's relationship with his son.

¶ 16    At the outset of imposing the sentences, the circuit court named the factors it considered: (1) that defendant pled guilty and the factual basis; (2) the financial cost of incarceration; (3) the PSI and the letter from the TASC representative; (4) the evidence offered in aggravation and mitigation; (5) the victim impact statements; and (6) the arguments of the parties.

¶ 17    As to mitigation, the circuit court noted the offense conduct did not cause or threaten physical harm to another, nor did defendant contemplate his actions would cause such harm.

¶ 18       As to aggravation, the circuit court considered the need for deterrence, but noted defendant's criminal history was "most significant." Specifically, the court noted the relationship between defendant's use or abuse or addiction, and the offenses. The court emphasized that courts desire those with dependency issues to address and take steps toward resolving those issues. In defendant's case, the court noted he had been given multiple opportunities by the courts to avail himself of the resources offered to do just that. However, the court described instead how defendant squandered those opportunities. In the court's words, the system repeatedly reached out to defendant as early as 2002 to assist him with his substance abuse issues.

¶ 19       In 2002, the circuit court noted, defendant was charged with a felony which resulted in a misdemeanor conviction, a drug and alcohol evaluation, and a mental health evaluation. Two years later in Peoria County, defendant received TASC probation for the above-referenced residential burglary. Defendant violated the terms of this probation, but the sentencing court "took it easy" on defendant and recommended boot camp. In an unrelated theft case, defendant also received TASC probation. In the sole matter where defendant received a prison sentence, the sentencing court again recommended drug and alcohol treatment.

¶ 20       The circuit court assumed the 2008 Tazewell County sentence for manufacture or delivery of cannabis had a drug and alcohol treatment component, but noted the record did not reveal that. And finally, defendant had two drug court sentences in Tazewell County, but was facing revocation proceedings in both.

¶ 21       Given the resources and efforts offered to defendant to address his dependency, the circuit court believed defendant had been given every opportunity to benefit but had not seized it. Defendant instead continued with the pattern established in 2002 of "stealing and having a drug component to that stealing."

¶ 22    As well, the court recognized there was a victim of each of defendant's offenses. Taking the five felony convictions with the Tazewell County drug court sentences, defendant had at least five felonies.

¶ 23    For the foregoing reasons, the circuit court found consecutive sentences were appropriate and "required to protect the public from further criminal conduct by the defendant." The court sentenced defendant to three years of incarceration on each of the four counts of burglary and ordered defendant's sentences to be served consecutively.

¶ 24    Defendant filed a motion to reconsider his sentences in which he asserted the consecutive terms were not appropriate because his felonies were nonviolent and related to his dependency. Defendant also filed an amended motion to reconsider his sentences in which he alleged the consecutive terms violated the federal and state constitutions. At the hearing on the motions, the circuit court restated the basis for the consecutive sentences and denied the motions.

¶ 25    This appeal followed.

¶ 26                                II. ANALYSIS

¶ 27                              A. Standard of Review

¶ 28    Circuit courts have broad discretionary sentencing powers, and we will not reverse a sentence absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). We give such deference because the circuit courts are usually in a better position to determine an appropriate sentence, having the opportunity to assess the defendant's characteristics including credibility and demeanor. *Id.* at 209. We do not substitute our judgment for that of the circuit court solely because we would weigh the sentencing factors differently. *Id.*

¶ 29    Defendant's brief addresses his assertions as a whole, and without division within the argument. For the sake of readability, we have tried to discern the issues he appears to raise

and address them individually. In short, defendant claims the aggregate sentence of 12 years is excessive given: (1) his nonviolent criminal history and character, (2) the relationship between his long-standing dependency and mental health issues, and (3) the impact the lengthy prison sentence will have on defendant and his son.

¶ 30                           B. Defendant's Criminal History and Character

                                 Support Consecutive Sentences

¶ 31          Defendant posits the mitigation and aggravation evidence did not justify his sentence. He cites that he has only had two prior boot camp sentences, and a single sentence of three years' incarceration for a theft in 2006. Defendant claims a sentence four times as long as the latter is excessive. He urges all he was doing was taking from storage units and, as the circuit court noted, did not cause, threaten, or contemplate physical harm to anyone. Defendant says none of his prior offenses involved violence. He calls his conduct not "particularly egregious."

¶ 32          Defendant argues as well the circuit court failed to give weight to mitigating circumstances, as the court only identified specifically the nonviolent nature of defendant's history.

¶ 33          The sentencing court is not required to articulate each factor it relies on when imposing its sentence. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. We presume the court has considered all mitigation evidence and other factors relevant to sentencing. *Id.* To rebut this presumption, the defendant must demonstrate affirmatively the circuit court did not consider such factors. *Id.* Defendant has made no such showing, and we reject that the circuit court failed to consider or give appropriate weight to sentencing factors and specifically evidence in mitigation.

¶ 34          The record demonstrates the circuit court considered the various factors, including the information in the PSI and the arguments of the parties. Without repeating, the court described

many of the factors it considered. We find the defendant's long criminal history, failed attempts to address his dependency, and commission of offenses while under supervision of another county's drug court support consecutive sentences for nonviolent theft crimes.

¶ 35 Where criminal conduct that causes financial harm only is ongoing and extensive, consecutive sentences are appropriate. *People v. Buckner*, 2013 IL App (2d) 130083, ¶¶ 38-41. Like *Buckner*, the circuit court was justified in concluding defendant's criminal conduct was not likely to end without the significant prison terms he received, to wit: "There was plenty of evidence in this case that defendant was extremely dangerous to the public in a financial sense and that she would have persisted in her ongoing crime spree had she not been removed from the opportunity to do so." *Id.* ¶ 41.

¶ 36 We find nothing to suggest the circuit court ignored evidence in mitigation or failed to give it sufficient weight, or that the nonviolent nature of the offenses should save defendant from consecutive sentences. The court's consecutive sentences simply were not an abuse of discretion as urged.

¶ 37 C. Defendant's Dependency and Mental Health Issues Are Not

Necessarily Mitigating

¶ 38 Defendant asserts the circuit court failed to consider as mitigating defendant's lengthy history of drug use, dependency, mental health, and the interrelationship of these to the commission of the burglaries. Defendant further posits the court did not appropriately weigh the TASC determination that there was a strong likelihood if given appropriate treatment he could be rehabilitated. We disagree.

¶ 39 As discussed above, we find the circuit court reviewed and considered the information presented in aggravation and mitigation. The court had discretion to conclude that

these factors deserved little weight, or that they were aggravating. *People v. Shatner*, 174 Ill. 2d 133, 160 (1996). Merely because defendant believes his dependency and mental health are mitigating, does not mean the court was required to so conclude. *Id.* at 159. A sentencing court is simply not required to consider a defendant's dependency is a mitigating circumstance. *Id.* at 159-60.

¶ 40 We have found as well that depression and anxiety, even so severe as to require hospitalization and medication at times, is not necessarily mitigating. *People v. Wheeler,* 2019 IL App (4th) 160937, ¶¶ 43-44. To be clear, the circuit court could have considered defendant's dependency and mental health in mitigation, but by no means was the court required to view the information as mitigating. *Id.* ¶ 44.

¶ 41 Therefore, the circuit court did not abuse its sentencing discretion in this regard either.

¶ 42 D. The Circuit Court Committed No Error Relative to Defendant's Son

¶ 43 Defendant makes two claims related to the circuit court's consideration of the effect of defendant's incarceration on his son. The reply brief states the issue defendant urges is that the court's failure to consider the impact on his son exemplifies the court's failure to properly weigh and consider mitigating factors in *general*. However, the immediately preceding paragraph states the issue is that the court failed to consider the effect on defendant's son *specifically*. Defendant asserts if it is the latter issue, we should utilize plain error review to reach the issue, for he raised this issue but once in passing during his sentencing argument and did not raise this issue in either of his postsentencing motions. We address these contentions in order.

¶ 44 Without repeating our discussion above, we find the circuit court did not err by failing to appropriately consider the factors in mitigation. The court noted it considered the PSI,

and the information offered by the parties. The PSI described defendant's son and defendant's relationship with his son, including that his son lived with him and he spent time with him. Defendant talked about his son during his allocution, and his counsel mentioned the son in passing during argument. Therefore, we conclude there was no failure to consider the various sentencing factors, including those relating to defendant's son.

¶ 45　　　As for the argument the circuit court should have given more weight to the effect of incarceration on defendant's son, and that we can conduct a plain error analysis, defendant cannot overcome the first hurdle for us to so do. To reach a plain error analysis, we must first determine if the court committed an obvious or clear error. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). However, as noted, defendant's argument the trial court failed to appropriately consider and weigh sentencing factors is without merit. The record demonstrates the court weighed and considered the information before it.

¶ 46　　　　　　　　　　　III. CONCLUSION

¶ 47　　　For the foregoing reasons, we affirm the circuit court's judgment.

¶ 48　　　Affirmed.