2022 IL App (2d) 210400-U
No. 2-21-0400
Order filed June 22, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18 CF 2447 |
| | ) | |
| DONNA DUPREE | ) | Honorable |
| | ) | T. Clint Hull, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in finding that consecutive sentencing was necessary to protect the public from defendant's criminal conduct. While on drug-court probation for retail theft and credit-card fraud, she committed the present offenses—further retail thefts. Defendant had an extensive history of theft and forgery and was diagnosed with kleptomania. The trial court could reasonably conclude that the only way to keep defendant from stealing was to keep her in custody.

¶ 2    Defendant, Donna Dupree, appeals from her three-year sentence for retail theft of property with a total value of more than $300 (720 ILCS 5/16-25(a)(1), (f)(3) (West 2018)). In its discretion, the trial court made the three-year sentence consecutive to a cumulative 11-year sentence imposed after revocation of probation in three prior cases, which involved retail theft and

unlawful use of a credit card. Defendant contends that the court abused its discretion in making the sentence in this case consecutive, where "[n]othing about the nature of the offense or [her] character indicated that consecutive sentencing was needed to protect the public." We disagree. Given defendant's extensive history of similar offenses, and her commission of the present offenses shortly after her release from inpatient drug rehabilitation, we hold that the court did not abuse its discretion in finding that consecutive sentences were "required to protect the public from further criminal conduct by *** defendant" (730 ILCS 5/5-8-4(c)(1) (West 2018)). Therefore, we affirm defendant's sentence.

¶ 3                                    I. BACKGROUND

¶ 4     The trial court held a combined sentencing hearing in this case and three prior cases where defendant received drug-court probation. We begin with those three prior cases.

¶ 5                  A. Case Nos. 17-CF-999, 18-CF-242, and 18-CF-243

¶ 6     On July 3, 2018, defendant entered nonnegotiated guilty pleas in case Nos. 17-CF-999, 18-CF-242, and 18-CF-243. In case No. 17-CF-999, defendant pleaded guilty to four Class 4 felony counts of unlawful use of a credit card (720 ILCS 5/17-36 (West 2016)). The factual basis for the plea was that, on four occasions, defendant knowingly used the deceased victim's Discover credit card for purchases at Family Dollar stores. In case Nos. 18-CF-242 and 18-CF-243, defendant pleaded guilty to one count of Class 3 felony retail theft. The factual basis for the plea in case No. 19-CF-342 was that, on February 20, 2018, defendant stole a Dyson vacuum cleaner from the Super Target in South Elgin. The factual basis for the plea in case No. 18-CF-243 was that, between February 10 and February 15, 2018, defendant stole vacuum cleaners from the same Super Target. Defendant was free on bond in case No. 17-CF-999 when she committed the offenses in case Nos. 18-CF-242 and 18-CF-243.

¶ 7     The presentence investigation report (PSI) for case Nos. 17-CF-999, 18-CF-242, and 18-CF-243 contained defendant's mental health evaluations from prior years showing diagnoses of bipolar disorder 2, posttraumatic stress disorder, and a personality disorder—not otherwise specified—with obsessive-compulsive and antisocial characteristics.  The PSI showed 21 prior convictions, including at least 12 felonies.  Most of the convictions were of theft or forgery. Defendant also had three drug-related convictions, including unlawful delivery of a controlled substance, and one conviction of unlawful use of a weapon.  Defendant had previously been in drug court, but the court terminated her participation when she reoffended.  The PSI writer scored her at maximum risk to reoffend.

¶ 8     In case Nos. 17-CF-999, 18-CF-242, and 18-CF-243, the trial court sentenced defendant to drug-court probation.  However, the court also imposed sentences of imprisonment, which it stayed.  Defendant's prior convictions made her eligible in all three cases for an extended-term sentence.  The court imposed but stayed a five-year prison term on each of the two Class 3 felony retail theft counts in case Nos. 18-CF-342 and 18-CF-343 and a six-year prison term on one of the Class 4 felony credit-card fraud counts in case No. 17-CF-999 (the remaining counts would merge).  Five years was the maximum nonextended prison term for a Class 3 felony (the maximum extended term was 10 years) (730 ILCS 5/5-4.5-40(a) (West 2016)), and six years was the maximum extended prison term for a Class 4 felony (730 ILCS 5/5-4.5-45(a) (West 2016)).  The court made the two five-year terms in case Nos. 18-CF-342 and 18-CF-343 concurrent to each other.  However, because defendant committed those retail thefts while on pretrial release in case No. 17-CF-999, the six-year term in that case was mandatorily consecutive to the five-year terms. See 730 ILCS 5/5-8-4(d)(8) (West 2018).  Thus, the aggregate stayed sentence was 11 years' imprisonment.

¶ 9 Defendant moved to vacate the stayed sentences as void. The trial court noted that it would not have sentenced her to drug court had it not imposed and stayed the sentences. Defendant withdrew her motion.

¶ 10 The drug court placed defendant in an inpatient substance-abuse-treatment program. On November 18, 2018, she completed the inpatient program. She was then placed in a halfway house. On December 14, 2018, she committed the offenses giving rise to the present case.

¶ 11                                    B. The Present Case

¶ 12 On December 15, 2018, the State charged defendant by complaint with two counts of retail theft of property (720 ILCS 5/16-25(a)(1), (f)(1), (f)(3) (West 2018)). Based on those charges, the State, on December 19, 2018, filed a petition to revoke defendant's probation in case Nos. 17-CF-999, 18-CF-242, and 18-CF-243 and terminate her drug-court participation.

¶ 13 On April 24, 2019, a grand jury indicted defendant on two counts of retail theft of property (720 ILCS 5/16-25(a)(1), (f)(1), (f)(3) (West 2018)). Both counts charged that, on December 14, 2018, defendant unlawfully took merchandise from the Kohl's store in South Elgin. Count I was charged as a Class 3 felony and alleged that the value of the stolen merchandise was more than $300. Count II was charged as a Class 4 felony and alleged that the value of the stolen merchandise was less than $300 and that defendant had a prior conviction of a theft-related offense.

¶ 14 On April 25, 2019, defendant entered nonnegotiated guilty pleas to both counts charged in this case. The factual basis for the pleas was that, on December 14, 2018, defendant stole merchandise worth about $340—jewelry and a bra—from the Kohl's store in South Elgin.

¶ 15 The June 18, 2019, PSI in this case concluded that defendant was at moderate risk to reoffend; this contrasted with the PSI for case Nos. 17-CF-999, 18-CF-242, and 18-CF-243, which deemed her at high risk to reoffend.

¶ 16    The PSI contained a 2019 psychiatric evaluation diagnosing defendant with bipolar disorder 2, substance abuse disorder (alcohol, cannabis, and cocaine) in early remission, kleptomania, and a personality disorder with obsessive-compulsive and antisocial traits.  In her statement to the PSI investigator, defendant said that she dropped out of high school in the ninth grade, when she was being abused by her father and sexually abused by her stepfather.  She ran away from home more than once to escape them.  She reported periodic employment with a sealcoating company for which she drove vehicles; in the off-season, she worked as a server in restaurants.  Her employer at the sealcoating company considered her a good employee and hoped that she could return to work.

¶ 17    Defendant had significant health problems.  Her bowel had been repeatedly obstructed by a prolapsed rectum.  She had back surgery for spinal deterioration as well as surgery on her shoulder and hip.  Every month, she received steroid injections and epidural blocks for joint or back pain.

¶ 18    Defendant reported prior heavy alcohol use but claimed that she had stopped drinking five years earlier.  However, in March 2018, she consumed "a bottle of wine and a bottle of Hennessey."  She has used marijuana since she was 11 years old.  More recently, she used it several times a week but desired it every day.  She last used marijuana just before her arrest in February of 2018.  She started using cocaine as a 13-year-old.  Her use increased when she was 14 and 15.  She last used marijuana in April 2018 (one year before her interview for the PSI).

¶ 19    Defendant described the circumstances of the offenses in this case:

"[O]n the day of the offense she had left the recovery home where she was residing in order to go job-hunting.  While out, she said that she stopped by Kohl's department store.  She said that she was not on her proper medications at the time and, although she had enough

money, she shoplifted a couple necklaces and a bra. [Defendant] stated, 'I wasn't thinking' and 'My klepto brain kicked in'. She said that she was not under the influence of drugs or alcohol at the time that she committed the offense, but she had intentions of getting high afterwards."

¶ 20    In a mental health and substance abuse evaluation, the biopsychosocial evaluator stated: "[Defendant] was severely traumatized as a child—physical, sexual, and emotional abuse from many of the adults in her life. She ran away from home at age 14, which is also when she started drinking. She has struggled with [substance use disorder] (alcohol, cocaine, and cannabis) and has been sober for just short of a year (3/14/18). She also struggles with kleptomania and will have a court date for this later this week."

In a mental health assessment completed on March 12, 2018, defendant told the evaluator that she " 'c[ould]n't walk into a store without walking out and stealing things.' "

¶ 21                                    C. Sentencing

¶ 22    On June 18, 2019, defendant entered a nonnegotiated stipulation to a violation of the terms of her drug-court probation in case Nos. 17-CF-999, 18-CF-342, and 18-CF-343, and the court took judicial notice of defendant's guilty plea in this case. The court then proceeded to a combined hearing for sentencing in this case and resentencing in the three other cases.

¶ 23    At that hearing, Andrew Nelson, a South Elgin police officer, described the thefts charged in this case. Responding to a call about a theft at the South Elgin Kohl's, he discovered defendant in the parking lot taking off a jacket and putting it in a backpack. He confronted her with the accusation of theft. She started crying. She said that she was in drug court and had given the merchandise back. Nelson overheard defendant making a call in which she said, " 'I stole from

the Kohls, stupid, stupid.' " Nelson did not observe anything to suggest that defendant was intoxicated.

¶ 24 Nelson testified that another police officer brought the Kohl's loss-prevention officer, "Ms. Garcia," to the parking lot to "d[o] a show-up on [defendant]." Garcia identified defendant as the person she had seen entering a fitting room carrying jewelry from the store and exiting apparently without that jewelry. Garcia checked the fitting room and did not find the jewelry. She then discovered defendant's abandoned cart containing the jewelry's packaging. Garcia confronted defendant and asked her to return to the store. Defendant handed the jewelry to Garcia and left. Nelson also learned that defendant had stolen a bra, which she wore out of the store. The price of the merchandise defendant took was $341.80.

¶ 25 Defendant called two witnesses. Alicia Klimpke, the Kane County Drug Court Coordinator, testified that drug-court participants often have initial failures as they deal with ingrained behavioral patterns. Klimpke explained that, after completing inpatient substance abuse treatment, drug-court participants are placed in a halfway house and undergo Moral Recognition Therapy (MRT), which is designed to "reduce[ ] recidivism and increase[ ] moral thinking[ and] reasoning." Because of her arrest in this case, defendant had not begun MRT. On cross-examination, Klimpke admitted that she was unaware of any medication designed to address kleptomania.

¶ 26 Kade Connell, defendant's probation officer, testified that, if defendant had not been arrested, she would have participated in programs to address her past trauma and develop moral behavior. Connell stated that the retail thefts in this case were defendant's only drug-court violations of which he was aware. Connell saw a "good prognosis for [defendant] to succeed in drug court if [she were] given an opportunity to continue."

¶ 27    After the trial court recited all the information that it considered, the court stated that it found only one applicable statutory mitigating factor—that defendant did not contemplate that her criminal conduct would cause or threaten physical harm. The court also recognized nonstatutory mitigating factors, most notably that defendant had a history of trauma. However, the court stressed that defendant had 17 felony convictions as of the hearing. These included the offenses in this case and a Cook County offense, all of which she committed while on drug-court probation. The court further noted that defendant (1) had been incarcerated four times since 2000, (2) had received TASC (Treatment Alternatives to Street Crime) probation in two 1995 forgery cases and failed to complete it, and (3) had previously failed to complete the drug-court program.

¶ 28    The trial court (1) reimposed the 11-year cumulative sentence for case Nos. 17-CF-999, 18-CF-342, and 18-CF-343, and (2) imposed in this case a consecutive three-year prison sentence on count I (count II would merge), for a cumulative sentence of 14 years. The court gave its rationale:

> "[I] have considered extensively the PSI and I have reviewed and re-read the background that [defendant] or the childhood that [defendant] had and the difficulties that she has had to have and encountered throughout her life. ***
>
> So I do consider all of the factors in mitigation that have been outlined, but I also have to take into consideration that *** not only in this case and this opportunity, but on many cases before she has been given opportunity after opportunity after opportunity *** but she has turned her back on that opportunity and continued to come and commit new felony offenses. And although this is not a violent crime, I do find that the public needs to be protected from [defendant] and the way to protect the public from [defendant] is to incarcerate [defendant].

I also find that a sentence of probation would be inconsistent with the ends of justice taking into consideration the nature and circumstances of the offense and her prior criminal history which I have already outlined but is extensive.

*** She committed two new criminal offenses, two new felony offenses. And as was shown in that video, that was not a crime of opportunity. That was not someone who just acted on a whim. That video shows somebody that consciously made the decision to steal and did so and did so [*sic*] while knowing that she was on drug court and did so knowing that she was on probation and did so knowing the consequences. So, ultimately, today she has to be made accountable for the behavior and it is hard to say that, but ultimately, that's the way this Court feels, so I am going to lift the stay."

The court thus lifted the stay and imposed the 11-year cumulative sentence in case Nos. 17-CF-999, 18-CF-342, 18-CF-343. The court then considered whether to make the three-year sentence in this case consecutive to the 11-year sentence:

"Now, this new felony offense is not a mandatory consecutive offense because the defendant was not on bail. She was on probation at the time that it was committed.

Now, pursuant to [section 5-8-4(c) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4(c) (West 2018)], it indicates that the Court may impose consecutive sentencing in any of the following circumstances and then in (c)(l) lists, if having regard for the nature and circumstances of the offense and the history and character of the defendant, the Court finds that consecutive sentences are required for protection of the public. ***

*** The Court makes [a] finding that a consecutive sentence in [case No. 18-CF-2447] is necessary after having regard for the nature and circumstances of the offense and

the history and character of the defendant. I do find that consecutive sentences are required for the protection of the public, specifically, the defendant has committed l7 prior felony offenses."

¶ 29    Defendant filed a motion to reconsider her sentences. She argued, among other things, that the Cook County offense that the trial court mentioned as having occurred during her drug-court probation did, in fact, predate that term of probation. The court held that there were no grounds to modify the sentence, notwithstanding the timing of the Cook County offense. Thus, the court denied the motion.

¶ 30    Defendant timely appealed in case No. 17-CF-999. We granted her leave to file late notices of appeal in case Nos. 18-CF-342 and 18-CF-343, and we consolidated those appeals with the appeal in case No. 17-CF-999. Defendant also filed a timely notice of appeal in this case. However, we summarily remanded the matter for compliance with Illinois Supreme Court Rules 604(d) (eff. July 1, 2017) and 605(b) (eff. Oct. 1, 2001) and vacated the denial of defendant's motion to reconsider as to this case.

¶ 31    On remand, the court properly advised defendant of the need for a postplea motion to preserve issues for appeal. Counsel filed a certificate of compliance with Rule 604(d) and represented that no further amendments to defendant's motion to reconsider sentence were necessary. At the hearing on the motion to reconsider, defendant testified that she had been hospitalized twice while awaiting transfer from jail to prison and was going to have surgery the day after the hearing. The court again denied the motion to reconsider. The court ruled that for the public's protection the sentence in this case needed to be consecutive with the sentences in case Nos. 17-CF-999, 18-CF-242, and 18-CF-243, because (1) defendant had committed 17 prior felonies, (2) defendant reoffended after multiple prison sentences, (3) defendant had not benefited

from multiple opportunities for treatment, and (4) the court had told defendant that her drug-court probation was her last chance, yet defendant reoffended while on that probation.

¶ 32 Defendant timely appealed. During the pendency of this appeal, we affirmed her sentences in case Nos. 17-CF-999, 18-CF-342, and 18-CF-343. *People v. Dupree*, 2022 IL App (2d) 191004-U, ¶ 52.

¶ 33                                   II. ANALYSIS

¶ 34 On appeal, defendant argues that the trial court abused its discretion in running her three-year sentence in this case consecutively to the 11-year cumulative sentence in case Nos. 17-CF-999, 18-CF-342, and 18-CF-343. She argues:

> "Nothing about the nature of the offense or [her] character indicated that consecutive sentencing was needed to protect the public. Though [she] has a criminal history, she has no history of violence against others despite growing up herself as the victim of violence. Further, at the time of the offense, [she] was showing rehabilitative potential as she got the mental health and substance abuse treatment she needed to deal with the root causes of her behavior. Thus, the trial court erred in finding her offense and history meant she was a danger to the public."

She emphasizes Connell's testimony that she would have a good chance at success if she continued with drug-court probation. She argues that her sentence should be modified to run concurrently with the sentences in the other cases.

¶ 35 The State responds that, under the consecutive-sentencing statute, the concern is the defendant's *criminal conduct*, not just his or her *violent criminal conduct*. According to the State, consecutive sentencing is necessary in this case to protect the public from defendant's proclivity for theft, forgery, and credit-card fraud.

¶ 36    In reply, defendant argues that it is more than just the nonviolent character of her offenses that compels a modified sentence: "It is also that the present, impulsive offense was followed immediately by immediate and unwavering regret and remorse." She also reiterates that the court overlooked her rehabilitative potential as demonstrated by "her recent focus on learning new habits and taking advantage of larger support systems."

¶ 37    Section 5-8-4(c)(1) of the Code provides:

"The court may impose consecutive sentences in any of the following circumstances:

(1) If, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." 730 ILCS 5/5-8-4(c)(1) (West 2018).

"In cases where consecutive sentences are not mandatory, such sentences should be imposed sparingly." *People v. Buckner*, 2013 IL App (2d) 130083, ¶ 35.

"Because the trial court is in the best position to consider a defendant's credibility, demeanor, general moral character, mentality, social environment, and habits, the trial court's imposition of consecutive sentences will not be reversed on appeal absent an abuse of discretion. [Citation.] The record must show that the trial court concluded that consecutive terms were necessary to protect the public. [Citation.] If the record does not reflect that the trial court took mitigating factors into account, including a defendant's potential for rehabilitation, and the record does not support the trial court's determination that consecutive sentences were necessary to protect the public, an abuse of discretion has occurred." *Buckner*, 2013 IL App (2d) 130083, ¶ 36.

¶ 38    Here, the court determined that a consecutive sentence was necessary to protect the public from further similar acts by defendant.  Defendant has not persuaded us that that finding was erroneous.  She has received treatment through the years, most recently in drug court.  However, her continual lapses into the same patterns of criminality—even shortly after her release from the inpatient program—show that her treatment has not addressed the conditions driving her recidivism.  Our supreme court "has repeatedly held that evidence of a defendant's mental or psychological impairments may not be inherently mitigating." *People v. Thompson*, 222 Ill. 2d 1, 42 (2006).  Some mental conditions are "a double-edged sword" and may be treated as aggravating circumstances. (Internal quotation marks and citation omitted.) *People v. Macri*, 185 Ill. 2d 1, 66 (1998).  Defendant was diagnosed with kleptomania and admitted to the PSI investigator in this case that her "klepto brain" had led her to steal from Kohl's.  She also admitted in a March 2018 mental health assessment that she "c[ould]n't walk into a store without walking out and stealing things."  While defendant has struggled with drug addiction, nothing suggests that defendant was using drugs when she stole from Kohl's or was motivated by the need to pay for drugs.  Further, although we disagree with defendant that the theft in this case seemed particularly impulsive—she had to *plan* to go into a dressing room to put on a bra and remove jewelry from its packaging—to the extent that the act was impulsive, it suggests that normal incentives are not likely to control her propensity for theft.  Also, while Klimpke and Connell testified that defendant's next step in drug-court probation would have been a program to improve her moral behavior, nothing about that program suggested it was designed to help someone with a pathological compulsion to steal.  As we commented in defendant's appeal in case Nos. 17-CF-999, 18-CF-342, and 18-CF-343, "a reasonable trial court could conclude that the only way to keep defendant from stealing was to keep her in custody." *Dupree*, 2022 IL App (2d) 191004-U, ¶ 46.  For all these reasons, it was

within the trial court's discretion to conclude that the only way to protect the public from defendant's further similar offenses was to increase her sentence beyond the cumulative 11 years it had already imposed.

¶ 39    Defendant argues that her case is analogous *People v. O'Neal*, 125 Ill. 2d 291 (1988), where the trial court held that consecutive sentences were not necessary to protect the public. In *O'Neal*, a jury found the defendant guilty of murder, rape, and aggravated kidnapping. *O'Neal*, 125 Ill. 2d at 293-94. The rape victim testified that the defendant and another person, Hendricks, abducted her and her boyfriend at gunpoint. They locked the boyfriend in the trunk. The defendant raped the victim. Afterward, Hendricks started raping the victim, but the defendant shot him in the head and fled. *O'Neal*, 125 Ill. 2d at 294-95. According to the defendant, Hendricks ordered him to rape the victim, but then Hendricks decided to rape her first. The defendant grabbed the gun that Hendricks had set down; Hendricks noticed this and tried to pull the defendant by the arms. The defendant shot him. *O'Neal*, 125 Ill. 2d at 296. The defendant testified that he was afraid of Hendricks because he had forced the defendant to participate in robberies and a purse-snatching; Hendricks had also forced the defendant at gunpoint to perform sexual acts on him. *O'Neal*, 125 Ill. 2d at 296.

¶ 40    The trial court sentenced the defendant to 40 years for murder, 20 years for rape, and 15 years for aggravated kidnapping, with the latter two sentences concurrent to each other but consecutive to the murder sentence. *O'Neal*, 125 Ill. 2d at 294.

¶ 41    The appellate court modified the sentences and made them all concurrent. The court found that the defendant "was not the type of criminal to be subjected to the harsh penalty of consecutive sentences"; the court based that determination on "the defendant's background,

family history, youth, and lack of significant past criminal behavior." *O'Neal*, 125 Ill. 2d at 298. The supreme court upheld the appellate court's decision:

> "While the record shows that the trial court addressed the evidence in aggravation prior to imposing sentence, there is no indication that the trial court gave serious consideration to defendant's youth and other evidence in mitigation, namely, his desire to free himself from Hendricks' oppressive deviate sexual practices. Indeed, the fact that the defendant did not harm the victim after he shot Hendricks is highly probative of defendant's mind-set." *O'Neal*, 125 Ill. 2d at 300.

The court summarized:

> "Considering the defendant's age, background, and criminal history, there would be small value in tacking the concurrent terms imposed for rape and aggravated kidnapping onto the end of a 40-year sentence for murder." *O'Neal*, 125 Ill. 2d at 301.

¶ 42 The facts set out by the *O'Neal* court make clear why it concluded that a sentence beyond the 40 years imposed for the murder would not protect the public: the defendant, although he had a criminal history, was caught up in an unusual situation unlikely to recur. By contrast, defendant's offense here was part of a fixed pattern that she was unable to break.

¶ 43 *People v. Griffin*, 113 Ill. App. 3d 184 (1982), which defendant also cites, is inapposite as well. In *Griffin*, the trial court imposed a cumulative sentence of 20 years' imprisonment on the 21-year-old defendant for a series of fraudulent purchases at four stores. *Griffin*, 113 Ill. App. 3d at 194. His only prior conviction was for submitting false information in an application for a firearms permit. *Griffin*, 113 Ill. App. 3d at 194. The trial court did not explain why it believed that the consecutive sentences were needed to protect the public (*Griffin*, 113 Ill. App. 3d at 194); it stated only that the defendant " 'has used cunningly his abilities and they are \*\*\* great abilities' "

(*Griffin*, 113 Ill. App. 3d at 192). The trial court here, unlike the trial court in *Griffin*, fully explicated its basis for deeming the consecutive sentence necessary. Moreover, defendant's criminal history provided a concrete basis for the court to believe that she would continue to reoffend.

¶ 44 This case somewhat more closely resembles *Buckner*, where we held that the trial court did not abuse its discretion in imposing consecutive sentences on a defendant who had repeatedly engaged in fraud. The defendant submitted false death certificates for her husband and child to obtain insurance payoffs from her employer, Hallmark Insurance Corporation (Hallmark), which provided her with life insurance policies as an employment benefit. *Buckner*, 2013 IL App (2d) 130083, ¶¶ 6-8. The defendant had previously committed a nearly identical fraud upon another insurance company that employed her. *Buckner*, 2013 IL App (2d) 130083, ¶ 11. After the defendant left employment with Hallmark, she told her new employer, LifeWatch, that her child had died; she did not receive any benefit in that instance but did receive "an outpouring of sympathy and some flowers." *Buckner*, 2013 IL App (2d) 130083, ¶ 12. During an unrelated mail fraud investigation, the defendant's vehicle was stopped by the police:

"The police inventoried [the] defendant's vehicle and discovered a credit card in someone else's name, a wallet containing a driver's license of someone other than defendant, and numerous slips of paper and envelopes containing the personal information, such as addresses, social security numbers, and birth dates, of approximately 40 people who had worked with defendant at LifeWatch. It was later determined that defendant had defrauded about 16 of those people for over $34,000." *Buckner*, 2013 IL App (2d) 130083, ¶ 15.

When the defendant did not appear for her sentencing, an investigator discovered that the address she provided for her PSI was the address of her mother's senior living facility. *Buckner*, 2013 IL App (2d) 130083, ¶ 16.

¶ 45　We held that any evidence in mitigation "was not sufficient to overcome the significant aggravating evidence that defendant would likely have continued to commit fraud on an unsuspecting public if she were not incarcerated for a longer period of time." *Buckner*, 2013 IL App (2d) 130083, ¶ 42.

¶ 46　The defendant here did not exhibit the audacity of the defendant in *Buckner*; her offenses showed less gall and perhaps more compulsiveness. Moreover, defendant here was cooperative with the court and probation officials. However, the problem facing the court was essentially the same; neither defendant showed the capacity for being deterred from their crimes. Thus, *Buckner* supports defendant's consecutive sentence in this case.

¶ 47　　　　　　　　　　　III. CONCLUSION

¶ 48　Because we reject defendant's challenge to her sentence, we affirm the judgment of the circuit court of Kane County.

¶ 49　Affirmed.