2022 IL App (2d) 191004-U
Nos. 2-19-1004, 2-19-1005, & 2-19-1006, cons.
Order filed March 15, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) ) | Nos.  17-CF-999 18-CF-342 18-CF-343 |
| DONNA L. DUPREE, | ) ) | Honorable T. Clint Hull, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Bridges and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1  *Held*:  The trial court sentenced defendant to drug-court probation for credit-card fraud and retail theft and imposed a stayed sentence of 11-years' imprisonment. The court did not abuse its discretion in lifting the stay when defendant violated her probation by committing further retail thefts. While defendant had yet to complete significant components of the drug-court program, the need to protect the public— manifested by defendant's extensive criminal history, recent recidivism, and diagnosis of kleptomania—outweighed the goal of rehabilitation.

¶ 2  Defendant, Donna L. Dupree, appeals from an aggregate sentence of 11 years' imprisonment imposed upon revocation of the drug-court probation ordered in three cases:

Nos. 17-CF-999 (involving unlawful use of a credit card (720 ILCS 5/17-36 (West 2016))), 18-CF-342 and 18-CF-343 (both involving retail theft (720 ILCS 5/16-25(a)(1) (West 2016))). Defendant complains that the court imposed her sentences after her "first misstep" following her completion of inpatient drug treatment and before she had a chance to participate in the more rehabilitative aspects of drug court. She argues that the sentences were an abuse of discretion because (1) she was deprived of a proper opportunity to benefit from drug court and (2) the severity of the sentences was unjustified given the lack of aggravating factors. Defendant's arguments might be potentially persuasive at a sentencing hearing; however, they fail to meet the demanding standard for establishing an abuse of discretion. We therefore affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On May 25, 2017, in case No. 17-CF-999, the State charged defendant with four counts of unlawful use of a credit card. Each count was charged as a Class 4 felony and alleged that, on January 14 and 15, 2017, defendant, with the intent to defraud the issuer or another, used a credit card to purchase merchandise worth less than $300 at a Family Dollar store. (A person who uses a credit card in the manner charged "is guilty of a Class 4 felony if the value of all items of value obtained or sought in violation of this Section does not exceed $300 in any 6-month period; and is guilty of a Class 3 felony if the value exceeds $300 in any 6-month period." 720 ILCS 5/17-36 (West 2016).)

¶ 5       On February 21, 2018, the State filed charges in case Nos. 18-CF-242 and 18-CF-243. Defendant was charged in each case with one count of Class 3 felony retail theft, alleging that defendant stole property with a value exceeding $300 from a Super Target in South Elgin. In case No. 18-CF-342, the State alleged that the offense took place on February 20, 2018. In case No. 18-

CF-343, the State alleged that the offense occurred between February 10 and February 15, 2018. Defendant was free on bond in case No. 17-CF-999 on those dates.

¶ 6     On July 3, 2018, defendant entered a nonnegotiated guilty plea to all counts as charged in case Nos. 17-CF-999, 18-CF-242, and 18-CF-243.  The factual basis for the plea in case No. 17-CF-999 was that, on four occasions, defendant knowingly used the deceased victim's Discover credit card for purchases at Family Dollar stores.  The factual basis for the plea in case No. 19-CF-342 was that, on February 20, 2018, defendant stole a Dyson vacuum cleaner from the Super Target in South Elgin.  The factual basis for the plea in case No. 18-CF-243 was that, between February 10 and February 15, 2018, defendant stole vacuum cleaners from the Super Target in South Elgin.

¶ 7     The presentence investigation report (PSI) prepared for the three cases included defendant's mental health evaluations from prior years showing diagnoses of bipolar disorder 2, posttraumatic stress disorder, and a personality disorder, not otherwise specified, with obsessive-compulsive and antisocial characteristics.  The PSI showed 21 prior convictions, including at least 12 felonies.  Most of the convictions were of theft or forgery.  Defendant also had three drug-related convictions, including unlawful delivery of a controlled substance, and one conviction of unlawful use of a weapon.  Defendant had previously been in drug court, but the court terminated her participation when she reoffended.  The PSI writer scored her as maximum risk to reoffend.

¶ 8     Defendant's sentencing hearing took place on September 19, 2019.  The State called Detective Christopher Hughes of the Elgin police to testify about the circumstances of the offenses in case No. 17-CF-999.  He explained that the credit card in question was issued to a man who died on January 4, 2017. According to Hughes, on January 14, 2017, and possibly also January 15, 2017, a person later identified as defendant successfully used the credit card ten times in Kane

County to obtain goods worth $1645 in total. Defendant also used the card in Cook County to purchase auto parts. The credit card was also declined about 20 times.

¶ 9    When Hughes went to arrest defendant on April 6, 2017, defendant went into her house and refused to come out. When she eventually surrendered, she stated that she had taken "a large amount of prescription medication, pills *** recently." She was taken to a hospital. After her release, she returned to speak to Hughes. She admitted that she had learned about the victim's death on the day it occurred from a person Hughes understood to be defendant's sister. Defendant said that the victim had previously allowed her to use the credit card. However, she acknowledged that she knew that any permission to use a credit card lapses when its holder dies.

¶ 10    The State asked Hughes if defendant had given any reason for making the purchases with the credit card. Hughes replied:

> "She stated that there was another female associated with the deceased. I think they were friends, maybe became a little bit more than friends, I don't know the specifics about it, a Debra Gregory. [Defendant] stated that she didn't want Debra to get all of his money or all of his items, get everything.
>
> Q. And so that's why she was spending the money and making ten to 20 purchases in a one-day period?
>
> A. That's what she told me, yes."

¶ 11    The State submitted a police department synopsis sheet relating to the offenses in case Nos. 18-CF-342 and 18-CF-343. According to that sheet, defendant was arrested on February 20, 2018, after a loss prevention officer at the South Elgin Super Target saw her taking the tag off a Dyson vacuum cleaner. She was transported to a hospital after saying that she " 'just took a bunch of pills.' " After her release, she admitted to the February 20, 2018, theft. When further questioned

about earlier thefts investigated by the loss prevention officer, she admitted that, between February 10 and February 15, 2018, she took merchandise from the same Super Target. According to a statement from that store's loss prevention officer, the merchandise taken consisted primarily of vacuum cleaners and was worth $3680.

¶ 12    Defendant introduced records of her medical treatment while in jail following her arrest on the charges. The records showed persistent depressive disorder, kleptomania, cocaine-use disorder, alcohol-use disorder, and tetrahydrocannabinol-use disorder.

¶ 13    At the sentencing hearing, defendant requested a sentence of drug-court probation and called several witnesses to support her request.

¶ 14    Defendant's sister testified that defendant was a long-term drug abuser. She also had bipolar disorder. When she stopped taking her medications for that condition, her drug abuse would become severe, and she would start stealing to pay for drugs. Defendant had been a caregiver for her brother and mother. Her sister believed that defendant would be motivated to participate in drug court to continue offering such care.

¶ 15    Dennis Woods testified that he was a friend of defendant's. They used to "party together all the time." He knew that defendant used drugs. Woods was currently in drug court and "successfully working through [the] program."

¶ 16    Phillip Wessel, an employee of Kane County Court Services, testified that he performed assessments for drug-court applicants. His role was to determine if the applicant had substance abuse issues. He explained that drug court accepted only "high-risk-high-need participants"— "high risk" meaning a high risk to reoffend and "high need" meaning a severe substance abuse disorder. Wessel assessed defendant as high need: she was a severe abuser of alcohol, cannabis,

and cocaine. Further, she reported a (1) history of physical, sexual, and emotional abuse, (2) mood disorder, and (3) stress disorder.

¶ 17    The trial court asked the parties if they had anyone from drug court available to testify to the likelihood that a person entering the program for the second time would succeed. Defense counsel noted that one of her subpoenaed witnesses, Emily Saylor, could speak on that subject (Saylor's role was not identified but, presumably, she was a court services employee involved in drug court). Saylor testified that drug court had changed since defendant participated in it. The program was "seeing more individuals who are reapplying again that have been through the program previously." Saylor did not believe that an offender would face "additional obstacles" in going through the program a second time. However, the offender would need to be committed "to going through the intensity of the drug court program again."

¶ 18    The State argued that drug court was not an appropriate disposition for defendant. The State asserted that defendant had a 34-year offense history and showed no ability to avoid offending even while released on bond. Moreover, the State contended that defendant was not using drugs at the time of several of her offenses; thus, no clear link existed between her drug abuse and her criminal activity. The State further argued that her retail thefts were premeditated— for instance, defendant took a cutting implement into stores so that she could remove the theft-prevention devices from Fitbits. In addition, she stole multiple high-priced vacuum cleaners. She had a pattern of claiming, when arrested, that she had taken a large quantity of drugs; she thus tried to force a hospital visit and avoid responsibility. According to the State, defendant was skilled at using claims of mental illness to her benefit; the State thus implied that she was malingering.

¶ 19    Defense counsel argued that prison had impeded defendant's attempts to address her mental health problems. Defendant was motivated to get a GED, as evidenced by her taking every

program available to her in jail. Further, because defendant had substantial medical needs, prison could endanger her health.

¶ 20 The trial court found in mitigation that defendant "did not contemplate that her criminal conduct would cause or threaten physical harm," and that "imprisonment *** would endanger her medical condition." The court did not agree that she was a malingerer and could not overlook her traumatic life history and the effects of her mental illness. In aggravation, the court found that (1) a sentence was necessary to deter others from committing the same crime, (2) defendant had a history of criminal activity or delinquency, and (3) she was on pretrial release in case No. 17-CF-999 when she committed the offenses charged in case Nos. 18-CF-342 and 18-CF-343. The court noted that defendant's prior convictions made her extended-term eligible in all three cases. The court also remarked that both parties had made compelling points and that the court was facing a difficult decision. The court ultimately concluded that defendant was an extreme example of a high-risk, high-need person whom drug court intended to benefit. It, therefore, sentenced her to 30 months' probation conditioned on her successful completion of the drug rehabilitation program.

¶ 21 The trial court also imposed stayed sentences of imprisonment in all three cases: a five-year term of imprisonment on each of the two Class 3 felony retail-theft counts in case Nos. 18-CF-342 and 18-CF-343 (the retail theft cases) and a six-year term of imprisonment on one of the Class 4 felony credit-card fraud counts in case No. 17-CF-999 (the remaining counts would merge). Five years was the maximum nonextended prison term for a Class 3 felony (the maximum extended term was 10 years) (730 ILCS 5/5-4.5-40(a) (West 2016)), and six years was the maximum extended prison term for a Class 4 felony (730 ILCS 5/5-4.5-45(a) (West 2016)). The court made the two five-year terms in case Nos. 18-CF-342 and 18-CF-343 concurrent to each other, but because she committed the retail thefts while on pretrial release in case No. 17-CF-999,

the six-year term in that case was mandatorily consecutive to the five-year terms. See 730 ILCS 5/5-8-4(d)(8) (West 2018). Thus, the aggregate sentence was 11 years' imprisonment.

¶ 22    Defendant moved to vacate the stayed sentences as void. The trial court noted that it would not have sentenced her to drug court had it not imposed the stayed sentences. Defendant withdrew her motion.

¶ 23    The drug court placed defendant in an inpatient substance-abuse-treatment program. She completed the program and was placed in a halfway house.

¶ 24    On December 19, 2018, the State filed a petition to revoke defendant's probation and terminate her drug court participation. The basis for the petition was that, on December 14, 2018, defendant had been charged with retail theft in case No. 18-CF-2447.

¶ 25    On April 25, 2019, defendant entered an open plea of guilty in case No. 18-CF-2447 to two counts of retail theft, one a Class 3 felony and the other a Class 4 felony. According to the State's factual basis, on December 14, 2018, defendant entered a Kohl's store, took jewelry and a bra into a dressing room, and left the room without those items. Defendant left the store wearing a blue coat and pushing a shopping cart. She abandoned the cart near the front of the store; it contained the packaging for the jewelry. A loss prevention officer stopped her and asked her to come back inside. Defendant refused. When the loss prevention officer questioned her, defendant threw the jewelry at the officer and fled. When police officers arrived at the scene, they saw defendant take off a blue coat and stuff it in a backpack. Defendant was wearing the stolen bra when the police stopped her.

¶ 26    The PSI prepared for sentencing in case No. 18-CF-2447 contained a 2019 psychiatric evaluation diagnosing defendant with bipolar disorder 2, substance abuse disorder (alcohol,

cannabis, and cocaine) in early remission, kleptomania, and a personality disorder with obsessive-compulsive and antisocial traits. The PSI writer scored her at a moderate risk to reoffend.

¶ 27    On June 18, 2019, defendant entered a nonnegotiated stipulation to the violation of the terms of her probation, and the court took judicial notice of defendant's guilty plea in case No. 18-CF-2447. The court then proceeded to a combined hearing for sentencing on case No. 18-CF-2447 and resentencing on case Nos. 17-CF-999, 18-CF-342, and 18-CF-343.

¶ 28    After a South Elgin police officer testified about defendant's thefts charged in case No. 18-CF-2447, defendant called two witnesses. Alicia Klimpke, the Kane County Drug Court Coordinator, testified that drug court participants begin with inpatient substance abuse treatment. After completing that treatment, participants are placed in a halfway house. After placement back in the community, participants undergo Moral Recognition Therapy (MRT), which is designed to "reduce recidivism and increase[ ] moral thinking[ and] reasoning." According to Klimpke, defendant was living in a halfway house when she committed the new offenses. She was subject to drug testing and had no positive tests. She had not begun MRT.

¶ 29    Klimpke explained that people accepted into drug court typically violate the terms of their probation at some point. Such violations typically draw sanctions in drug court. It is not "the general practice for someone to be kicked out of drug court on their first violation." The reason "drug court still keep[s] people *** after they commit a new felony and after they commit violations" is that the purpose of the program is to change behavioral patterns that may have existed for years.

¶ 30    Kade Connell, defendant's probation officer, also testified. He said that defendant had completed inpatient substance abuse treatment and moved to a halfway house. She lost her halfway house placement upon the filing of the December 2018 charges. She was then placed on

house arrest; she moved in with her brother. She complied with the terms of house arrest. Had defendant not been rearrested, she would have participated in programs to help her with past trauma and develop moral behavior. Connell noted that it is not unusual for people to struggle in drug court, especially early in the program. Defense counsel asked Connell whether defendant would have a "good prognosis *** to succeed in drug court [were she] given an opportunity to continue." He responded:

> "We've seen effort from [defendant]. She has done a nice job of communicating with probation. We have rarely, if ever, that I can recall *** not been able to get a hold of [her] or haven't had her show up to court or anything along those lines."

As far as Connell knew, defendant's offenses in case No. 18-CF-2447 were her only drug-court violations.

¶ 31    The State argued that, when the trial court sent defendant to drug court, it admonished her several times that this was her final chance before incarceration. The State argued that allowing defendant to continue in drug court would be inappropriate because she had ceased using drugs but nevertheless committed new offenses. The State pointed out that defendant had told an evaluator that she stole because she found it exciting. Thus, the State inferred that substance abuse was not driving her criminality. The State also argued that defendant was using her drug-court placement "like the Monopoly get out of jail free card" and that the drug court had not been consistent in imposing sanctions on her.

¶ 32    Defense counsel argued that the roughly three months that defendant had participated in drug court were insufficient to break her past behavior patterns. Notably, she never had a chance to go through MRT—a program developed to help participants overcome a criminal lifestyle.

¶ 33    After reciting all the information that it considered, the trial court stated that it found only one applicable statutory mitigating factor: that defendant did not contemplate that her criminal conduct would cause or threaten physical harm.  The court did recognize that defendant had a history of trauma.  However, the court stressed that defendant had 17 felony convictions as of the hearing.  These included the offenses in case No. 18-CF-2447 and a Cook County offense, all of which she committed while on probation.  The court further noted that defendant (1) had been incarcerated four times since 2000, (2) had received TASC (Treatment Alternatives to Street Crime) probation in two 1995 forgery cases and failed to complete it, and (3) had previously failed to complete the drug-court program.

¶ 34    The trial court reimposed the suspended sentences in case Nos. 17-CF-999, 18-CF-342, and 18-CF-343, reasoning as follows:

> "Now, at the time of the last sentencing, the Court heard all of the same things I heard today.  I considered all of those at the time and I really had to reflect and think really really hard about my sentence.  And at that point in time, despite her lengthy criminal history, despite the fact that she failed out of drug court on a prior occasion, I indicated that I was going to give her another opportunity and placed her back into drug court.

> At the time, I made a concerted effort to make a good record to indicate not necessarily *** that I was going to place a stick over or incentivize her to behave by putting the stayed sentence, but at the time that I issued the stayed sentence, the issue for the Court was that her criminal history made her extended-term eligible, that is would have been well within the Court's discretion after considering her prior criminal history to give her an extended sentence, and despite all of that, I wanted to give her an opportunity to complete drug court.

So, ultimately, when I entered the sentence, I made it very clear by issuing a stayed sentence where I had indicated first that she was going to be sentenced to six years in the department of corrections in 17 CF 999. That that was going to be—and that was a max term. That was six years on a Class 4.

Then, on the retail theft, the range of sentence would be two to five years. I sentenced her to five years which was not an extended term but the maximum sentence on a straight Class 3 in both 18 CF 10 342 and 343. That was consecutive to 17 CF 999 but stayed that five-year sentence, pending her successful completion of drug court.

She then arrives in front of me today having committed a new felony offense in Cook County of retail theft and committing a new felony offense here in Kane County. So, ultimately, it is not any easier today than it was when I sentenced the defendant before, but at some point in time, a defendant has to be held accountable for their actions."

Further:

"[A]lthough this is not a violent crime, I do find that the public needs to be protected from [defendant] and the way to protect the public from defendant is to incarcerate [defendant].

I also find that a sentence of probation would be inconsistent with the ends of justice taking into consideration the nature and circumstances of the offense and [her extensive criminal history].

*** She committed two new criminal offenses, two new felony offenses. And as was shown in [the State's evidence] video, that was not a crime of opportunity. That was not someone who just acted on a whim. That video shows somebody that consciously made the decision to steal and did so and did so while knowing that she was on drug court and did so knowing that she was on probation and did so knowing the consequences. So,

ultimately, today she has to be made accountable for the behavior and it is hard to say that, but ultimately, that's the way this Court feels, so I am going to lift the stay."

¶ 35 The trial court sentenced defendant to three years' imprisonment in case No. 18-CF-2447. The court found it necessary for the protection of the public to make that sentence consecutive to the sentences in case Nos. 17-CF-999, 18-CF-342, and 18-CF-343. Thus, defendant's aggregate prison term was 14 years.

¶ 36 After imposing the sentence in case No. 18-CF-2447, the court further commented on its reasoning:

"The final thing that the Court wants to note for the record is that I believe *** that incarceration should be the absolute last resort. I believe in our speciality [*sic*] courts and I believe in what the speciality [*sic*] courts are doing not only statewide but R 246 also in our county.

This is a situation where this Court has had to think long and hard about what the appropriate sentence should be and these are what are considered nonviolent crimes which was the reason why the Court believed in giving the defendant an opportunity last time, despite her lengthy criminal history. But at some point in time, there has to be accountability. This is not me sentencing her on one felony. This is actually me sentencing her on three different felonies. And based upon all of that, even though it is a 14-year sentence on what we would consider nonviolent offenses, this is not done in a vacuum and this is done based upon her entire history in the criminal justice system."

¶ 37 Defendant filed a motion to reconsider her sentences. She argued, among other things, that the Cook County offense that the trial court mentioned as having occurred during her probation actually predated her probation. The court held that there were no grounds to modify the sentence,

notwithstanding the timing of the Cook County offense. The court denied the motion. Defendant timely appealed in case No. 17-CF-999. We granted her leave to file late notices of appeal in case Nos. 18-CF-342 and 18-CF-343, and consolidated those appeals with the appeal in case No. 17-CF-999.

¶ 38                                    II. ANALYSIS

¶ 39     On appeal, defendant argues that the 11-year aggregate prison sentence imposed upon revocation of her drug-court probation in case Nos. 17-CF-999, 18-CF-342, and 18-CF-343 was an abuse of discretion because the "evidence at sentencing showed that she was motivated and well-suited for true rehabilitation through drug court if only she had the time to take advantage of its programs." She contends that her new offense (in case No. 18-CF-2447) occurred before she had a chance to participate in the more rehabilitative aspects of the drug-court program. Further, she asserts that the circumstances of her offenses in case Nos. 17-CF-999, 18-CF-342, and 18-CF-343 did not warrant a maximum-extended term combined with a maximum nonextended term. Concerning case No. 17-CF-999, her friend had allowed her to use the credit card while he was alive, and the State charged only because she continued to use it after he died.

¶ 40     She also notes, as to case Nos. 18-CF-342 and 18-CF-343, that she "gave back items when caught and made no attempt to dodge responsibility" Nor did she contemplate, threaten, or cause serious harm with any of the offenses. Further, she "showed significant rehabilitative potential, particularly in light of her work in drug court," as demonstrated by the positive view of witnesses such as her probation officer and by her intensive participation in classes in jail. Moreover, her mental health problems and her history of trauma were mitigating. Finally, imposing such severe sentences for her first offense after placement in drug court ran counter to the program's

progressive sanctions model. The trial court chose a suspended sentence as "a stick when imposing probation," only to hastily "impose[ ] that sentence at [defendant's] first misstep."

¶ 41 The State disagrees, contending that the sentences were reasonable given defendant's criminal history and past failures with drug court and other forms of probation. The State further argues that the thefts charged in case Nos. 18-CF-342 and 18-CF-343 were serious, planned, and not done on impulse. The State also notes that nothing prevents a court from imposing a maximum sentence for a nonviolent crime.

¶ 42 In reply, defendant clarifies that she is asking for a reduced sentence, but not *necessarily* a further sentence of probation. Defendant also points out that her mental health record contains a diagnosis of kleptomania that predates the arrest that led to her probation revocation. Finally, she states that her likelihood of reoffending was viewed as "moderate," having dropped from "maximum" at the time of her resentencing.

¶ 43 Under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) reviewing courts have the power to reduce sentences. "That power *** should be exercised cautiously and sparingly," and a reviewing court "may not alter a defendant's sentence absent an abuse of discretion by the trial court." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)).

> "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these

factors than the reviewing court, which must rely on the 'cold' record. The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." (Internal quotation marks and citations omitted.) *Alexander*, 239 Ill. 2d at 212-13.

A court resentencing a defendant after a violation of probation "may properly consider a defendant's conduct while on probation as evidence of rehabilitative potential," but it may not punish the defendant for the conduct that constituted the probation violation. *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2009).

¶ 44 Our supreme court "has repeatedly held that evidence of a defendant's mental or psychological impairments may not be inherently mitigating." *People v. Thompson*, 222 Ill. 2d 1, 42 (2006). Some mental conditions are "a double-edged sword" and may be treated as aggravating circumstances. (Internal quotation marks and citation omitted.) *People v. Macri*, 185 Ill. 2d 1, 66 (1998).

¶ 45 We note first where defendant's aggregate sentence fell within the permissible range. The trial court deemed that defendant was extended-term eligible as to all offenses at issue in this appeal. See 730 ILCS 5/5-5-3.2(b)(1) (West 2016)) (a defendant is extended-term eligible when he or she "is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts"). The minimum nonextended prison term for a Class 3 felony was 2 years, and the maximum extended

term was 10 years. 730 ILCS 5/5-4.5-40(a) (West 2016). The minimum nonextended prison term for a Class 4 felony was one year, and the maximum extended term was six years. 730 ILCS 5/5-4.5-45(a) (West 2016). Further, the sentences in case Nos. 18-CF-342 and 18-CF-343 were mandatorily consecutive to that in case No. 17-CF-999. See 730 ILCS 5/5-8-4(d)(8) (West 2018) ("If a person charged with a felony commits a separate felony while on pretrial release ***, then the sentences imposed upon conviction of these felonies shall be served consecutively ***."). Thus, with the sentences in case Nos. 18-CF-342 and 18-CF-343 running consecutively to each other, defendant was facing a minimum possible aggregate sentence of three years' imprisonment and a maximum possible aggregate sentence of 16 years' imprisonment. Given defendant's undeniably extensive criminal history, an aggregate sentence of 11 years' imprisonment—which was closer to the midpoint of the range than to its maximum—is not obviously disproportionate.

¶ 46    Defendant argues that "evidence at sentencing showed that she was motivated and well-suited for true rehabilitation through drug court if only she had the time to take advantage of its programs." This is principally an argument in favor of our imposing a further sentence of probation; the argument also implies that the court gave insufficient weight to her rehabilitative potential. We are unpersuaded by either the principal point or the implication. As the State points out, "the need to protect the public may outweigh mitigating factors and the goal of rehabilitation" (*People v. Sims*, 403 Ill. App. 3d 9, 24 (2010)). On the record here, a reasonable trial court could conclude that the only way to keep defendant from stealing was to keep her in custody. Her diagnosis of kleptomania supports that conclusion. See *Thompson*, 222 Ill. 2d at 42 (a psychiatric diagnosis is not inherently mitigating). That diagnosis was first suggested in a psychiatric

evaluation completed on July 22, 1994.[1] In a mental health assessment completed on March 12, 2018—that is, after defendant's most recent arrest—she told the evaluator that she " 'c[ould]n't walk into a store without walking out and stealing things.' " She reported that she was shoplifting every two days. Although court personnel testified that defendant had not yet participated in the component of drug court intended to aid substance abusers in developing moral behavior, nothing about that program suggested that it was designed to help someone overcome a pathological compulsion to steal. Thus, we detect no abuse of discretion in the court's finding that the need to protect the public outweighed the goal of rehabilitation.

¶ 47    Defendant argues that the court had no basis to impose the maximum Class 4 extended-term sentence for unauthorized use of a credit card in case No. 17-CF-999. She notes that "there was no dispute that [she] neither contemplated, threatened, [n]or caused serious harm." She contends that the sentence was "particularly disproportionate" considering the circumstances of the offense: she "used a deceased friend's credit card that she had been permitted to use in the past, but that she knew she no longer had permission to use." This is not persuasive.

¶ 48    A trial court should base its sentence on the circumstances of each case. *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986); *People v. Morrow*, 2014 IL App (2d) 130718, ¶ 12. Relevant factors include "the nature and extent of each element of the offense as committed by the defendant." (Internal quotation marks and citations omitted.) *Saldivar*, 113 Ill. 2d 256, 268. at 268-69. A person who unlawfully uses a credit card in the manner with which defendant was charged "is guilty of a Class 4 felony if the value of all items of value obtained or sought in violation of this

_____

[1] Because of the poor quality of the copy in the record, we cannot be entirely certain of the date. The date of the evaluation might be 1991.

Section does not exceed $300 in any 6-month period; and is guilty of a Class 3 felony if the value exceeds $300 in any 6-month period." 720 ILCS 5/17-36 (West 2016). Here, the State charged defendant with four Class 4 felonies, but the circumstances—that defendant used one card over a day or two to obtain goods worth approximately $1645—supported a Class 3 felony charge. The State could have charged defendant with a higher class of offense, which is an appropriate sentencing consideration.

¶ 49    Defendant suggests that it is mitigating that she had permission to use the credit card in the past. We disagree. Detective Hughes testified that defendant admitted that she used the card to deprive Debra Gregory of the deceased card holder's property. That admission indicates a degree of personal malice not typically associated with credit card fraud.

¶ 50    Defendant argues that, because it was uncontested that she did not contemplate that any of her criminal conduct would cause or threaten physical harm, sentences in the upper part of the applicable sentencing range were inappropriate. We do not agree. Although the threat of physical harm is an important factor in aggravation, it is not the only one. Unlawful use of a credit card essentially never threatens physical harm and retail theft rarely does. Nevertheless, the legislature made such offenses Class 3 or Class 4 felonies. In doing so, it authorized trial courts to use the entire sentencing range for offenses of those classes. See *People v. Nesbit*, 2016 IL App (3d) 140591, ¶ 69 (the defendant could not raise qualities inherent to his offense to complain that the trial court imposed a sentence towards the upper end of the sentencing range). The court was entitled to do so here.

¶ 51                        III. CONCLUSION

¶ 52    As none of defendant's arguments set out a basis upon which we might reduce her sentences, we affirm the judgment of the circuit court of Kane County.

¶ 53    Affirmed.